**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**CAPE GIRADEAU DIVISION**

| | | |
|---|---|---|
| **CHARLES W. HANOR** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **DICKY G. HANOR** | § | **JURY REQUESTED** |
| *Defendant* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND DECLARATORY JUDGMENT**

Charles W. Hanor (hereinafter referred to as "Plaintiff Charles Hanor" or "Charles Hanor" or "Plaintiff") files this Original Complaint and Declaratory Judgment against Dicky G. Hanor (hereinafter referred to as "Defendant Dicky Hanor" or "Dicky Hanor" or "Defendant") and would respectfully assert the following allegations and claims.

**I.     SUMMARY OF LAWSUIT**

1.     Elbert and Irene Hanor were married in 1940 and began building the Hanor family farm located between Charleston and East Prairie Missouri for their sons Charles Hanor and Dicky Hanor. Elbert Hanor passed in 1978 and Dicky Hanor continued farming the Hanor farm. Irene Hanor, the mother of Charles Hanor and Dicky Hanor, passed January 6, 2014 and Charles Hanor and Dicky Hanor inherited the farm. Dicky Hanor continued farming the Hanor farm and entered into a partnership with now co-owner Charles Hanor to continue farming. Dicky Hanor continued entering into potato leases from 2014 to present. Dicky Hanor concealed potato leases from Charles Hanor and pocketed all of the concealed, sizeable potato rent from 2014-2017. For 2014-2019, the total potato cash rent was $525,409.25, Plaintiff's ½ share was $277,644.63, Defendant paid Plaintiff $143,854.75, and the per cent of the rent Plaintiff received was 27.38% even though Plaintiff owned ½ or more of the land. The potato sublessee pays all the expenses and Plaintiff and

1

Defendant only had to pay for ½ of the repairs on the irrigation pivots. Defendant owes Plaintiff at least $133,789.88 for potato rent. Defendant charged Plaintiff for fertilizer $32,591.32 in 2014, $55,$477.63 in 2015 and $48,140,47 in 2016.  Dicky Hanor retired in 2016 and Milas Mainord, the new farm partner, charged Plaintiff for fertilizer $21,938.86 in 2017, $17,660.66 in 2018 and $15,353.00 in 2019. The price and quantity of fertilizer used in 2014-2016 versus 2017-2019 did not materially vary. Defendant overcharged Plaintiff about $81,257.90 for fertilizer. Defendant overcharged and underpaid Plaintiff additional amounts that can be determined from the partnership records that are in the possession of Defendant and his CPAs. In 2017, Defendant Dicky Hanor demanded a partition of the land whereby he received significantly more than half of the best fields and that Charles Hanor pay him an additional over $100,000 for the irrigation pivots on his land. The land cannot be divided by Dicky and Charles Hanor since their daughters have a remainder interest in about ½ of the land and one of the daughters is still a minor. Irene Hanor made sure in her trust that her farm could not be sold or transferred by her sons and would go to her granddaughters. Irrigation pivots are fixtures like fences and barns constructed on land belong to the landowner and not a tenant farmer like Dicky Hanor. Fixtures are owned by the landlord and not the renter regardless of who pays for them.

## II.    PARTIES

2.    Plaintiff Charles Hanor is a natural person residing in San Antonio, Bexar County, Texas continuously from May of 1977 to the present.

3.    Defendant Dicky Hanor is natural person and a resident of Charleston, Mississippi County, Missouri, and who may be served with citation by serving Dicky G. Hanor at 51 S 407th Rd., Charleston, Missouri 63834.

### III.    JURISDICTION, VENUE AND FACTUAL BACKGROUND

4.     This suit is based on the laws of the United States, the Federal Declaratory Judgment Act, and the laws of Texas and Missouri involving Declaratory Judgments and contracts and other causes.

5.     The Court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiff and Defendant are citizens of different U.S. states, and the amount in controversy exceeds $75,000, excluding interest and costs. Plaintiff is a Texas resident and Defendant is a Missouri resident.

6.     The Court has jurisdiction over the lawsuit pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

7.     This is an action for declaratory judgment that Plaintiff does not owe Defendant anything for the pivot irrigation units on Plaintiff's and the jointly owned farmland.

8.     Venue is proper in this district under 28 U.S.C. §1391(b)(1) because Defendant Dicky Hanor resides in this district and some of the acts complained of occurred in this district.

9.     The amount in controversy substantially exceeds $75,000.00, excluding interest and costs.

10.     Plaintiff Charles Hanor is a Texas resident and citizen since 1975 and Defendant Dicky Hanor is a Missouri resident and citizen.

11.     Defendant Dicky Hanor has continuously and systematically transacted business with Charles Hanor through:

a.     conducting business and entering into multiple contracts with Plaintiff Charles Hanor regarding the profits and expenses, or other income from the farmland at issue which is mostly co-owned by Plaintiff Charles Hanor and a smaller part solely owned by Plaintiff

3

Charles Hanor, a Bexar County, San Antonio, Texas resident, as shown by the statements herein and the attached exhibits;

b.   these contracts comprised entering into a partnership agreement with Charles Hanor to farm the Hanor Farm owned jointly to third party lessees;

c.   these contracts further comprised entering into an agency agreement with Charles Hanor to lease the Hanor Farm owned solely by Charles Hanor to third party lessees; and

d.   committed and caused tortious conduct and harm to Plaintiff Charles Hanor.

12.   Defendant Dicky Hanor negotiated and entered into annual crop share lease contracts in 2014, 2015 and 2016 with Plaintiff Charles Hanor.

13.   The annual crop share lease contracts in 2014 to 2016 between Plaintiff Charles Hanor, who is a Texas resident, and Defendant Dicky Hanor called for the regularly sending to Charles Hanor in San Antonio, Texas statements of crops sold for his share of the revenues and detailed invoices for his share of expenses and payments to Charles Hanor and payments by Charles Hanor from San Antonio, Texas multiple times each year.

As part of the partnership agreement with Plaintiff Charles Hanor, Defendant Dicky Hanor negotiated and signed annual cash rent lease contracts from 2014 to 2019 with third-party farming companies, on the land owned by Plaintiff Charles Hanor.

14.   The partnership in 2014 to 2019 with Plaintiff Charles Hanor, called for Defendant Dicky Hanor and his agents to multiple times each year to send Plaintiff Charles Hanor statements for his share of the revenues and expenses to him in Bexar County, San Antonio, Texas, and Charles Hanor sending Dicky Hanor and his agents' payments for expenses incurred to Dicky Hanor.

4

15.     Dicky Hanor instructed and directed his agents as to the amounts to pay and charge Charles Hanor.

16.     Charles Hanor was at risk each year for his share of expenses which were incurred during the spring of year and at risk each year for his share of income, if any, which was received each year and often not paid in part until the next year.

17.     As part of the partnership agreement with Plaintiff Charles Hanor, Defendant Dicky Hanor negotiated and signed annual cash rent leases from 2014 to 2019 with third-party farming companies on the land co-owned by Plaintiff Charles Hanor, and concealed leases and income from Charles Hanor that Dicky Hanor received on Charles Hanor's land, sent statements multiple times each year that incorrectly and falsely represented Charles Hanor's share of the income and expenses and under paid Charles Hanor his share of the income and overcharged Charles Hanor for the shared expenses.

18.     As part of the agency agreement with Plaintiff Charles Hanor, Defendant Dicky Hanor negotiated and signed annual cash rent lease contracts from 2014 to 2019 with third-party farming companies, on the land owned by Plaintiff Charles Hanor.

19.     As part of the agency agreement with Plaintiff Charles Hanor, Defendant Dicky Hanor negotiated and signed annual cash rent leases from 2014 to2019 with third-party farming companies on the land owned by Plaintiff Charles Hanor, who is a Texas resident, and concealed and under paid income owed to Charles Hanor.

20.     Defendant Dicky Hanor negotiated and entered into the lease contracts with Plaintiff Charles Hanor and a partnership agreement and agency agreement with Charles Hanor to sign lease contracts with third parties on Charles Hanor's behalf that are the subject of this suit and

5

performable in part and were performed in the State of Texas and Bexar County, San Antonio, Texas.

21.    The contracts and partnership and agency agreements that are the subject of this suit were entered into and performable in part and were performed in the State of Texas and Bexar County, San Antonio, Texas because the Hanor farmlands in the State of Missouri jointly and solely owned by Plaintiff Charles Hanor could not have been leased and farmed by Defendant Dicky Hanor without express contractual permission and the specific and extensive contacts and the transactions created by Dicky Hanor's contractual, partnership, and agency obligations to Plaintiff Charles Hanor, such as shown by the attached exhibits.

22.    Defendant Dicky Hanor created continuing substantial contractual, partnership, and agency obligations to Plaintiff Charles Hanor between himself and Plaintiff Charles Hanor.

23.    Defendant Dicky Hanor has regularly traveled to the State of Texas and Bexar County, San Antonio, Texas, on business involving the contracts relating to this suit.

24.    The first oral lease between Plaintiff Charles Hanor and Defendant Dicky Hanor was negotiated and entered into in Bexar County, San Antonio, Texas in February, and March of 2014 when Defendant Dicky Hanor traveled to San Antonio, Texas to discuss with Plaintiff Charles Hanor his continued farming and renting of the farmland that Plaintiff Charles Hanor inherited on January 6, 2014 upon their mother's death.

25.    The oral crop share lease between Plaintiff Charles Hanor and Defendant Dicky Hanor was renewed each year in 2015 and in 2016.

26.    The lease included a crop share lease, provided that Defendant Dicky Hanor and his agents would pay one-third of the gross revenues Defendant Dicky Hanor received on the crop at numerous times during harvest in the summer and fall each year that he planted, cultivated,

irrigated, and harvested on the farmland owned by Plaintiff Charles Hanor to Plaintiff Charles Hanor at his address at 207 Zambrano Road, San Antonio, Texas 78209.

27.     The crop share lease required that Defendant Dicky Hanor and/or his agents systematically send true and accurate invoices, bills, and statements detailing Plaintiff Charles Hanor's share of the farm income and expenses incurred numerous times throughout each year for payment by Plaintiff Charles Hanor from 207 Zambrano Road, San Antonio, Texas.

28.     Defendant Dicky Hanor sent and instructed his agents to systematically send invoices, bills, and statements detailing farm income and expenses at numerous times each year for payment by Plaintiff Charles Hanor from 207 Zambrano Road, San Antonio, Texas.

29.     Defendant Dicky Hanor and/or his agents did not systematically send true and accurate invoices, bills, and statements detailing farm income and expenses throughout the years 2014 to 2019 for payment by Plaintiff Charles Hanor at 207 Zambrano Road, San Antonio, Texas.

30.     The crop share lease required that Defendant Dicky Hanor and/or his agents systematically send true and accurate payments from farm income to which Plaintiff Charles Hanor was entitled throughout each year to Plaintiff Charles Hanor at 207 Zambrano Road, San Antonio, Texas.

31.     Defendant Dicky Hanor sent payments and instructed his agents to systematically send payments from farm income to which Plaintiff Charles Hanor was entitled, at numerous times each year to Plaintiff Charles Hanor at 207 Zambrano Road, San Antonio, Texas.

32.     Defendant Dicky Hanor and/or his agents did not systematically send true and accurate payments share from farm income to which Plaintiff Charles Hanor was entitled throughout the years 2014 to 2016 to Plaintiff Charles Hanor at 207 Zambrano Road, San Antonio, Texas.

33.     Defendant Dicky Hanor delivered and provided communications containing the representations and misrepresentations specified above to Plaintiff Charles Hanor in the State of Texas by delivering them and communicating them to Plaintiff Charles Hanor.

34.     Defendant Dicky Hanor or his agents delivered and communicated the attached Hanor Farm business records that contained the representations and statements that are alleged to be false to Plaintiff Charles Hanor .

35.     Defendant Dicky Hanor's obligations and representations to and contracts, partnership, and agency with Plaintiff Charles Hanor were not random, fortuitous, or attenuated.

36.     There was nothing fortuitous about Defendant Dicky Hanor regularly and systematically mailing or his agent's regularly mailing numerous business reports, bills, checks, and invoices to Plaintiff Charles Hanor at his home in San Antonio, Texas multiple times each year from 2014 to present.

37.     There was nothing fortuitous about Plaintiff Charles Hanor regularly mailing payment checks to Defendant Dicky Hanor or the agents of Defendant Dicky Hanor from Plaintiff Charles Hanor's home in San Antonio, Texas multiple times during each year from 2014 to present.

38.     From the inception of the lease agreement on the Hanor Farm in February 2014 through the present, the crop share farm lease between Defendant Dicky Hanor and Plaintiff Charles Hanor has been performed in substantial part in San Antonio, Texas, as Dicky Hanor and his agents have regularly, systematically and continuously sent, or caused to be sent invoices, bills, and statements for expenses of Plaintiff Charles Hanor to pay and reports on crop sales and payments to Plaintiff Charles Hanor in San Antonio, Texas.

39.    Defendant Dicky Hanor negotiated and entered into the lease to farm the Hanor Farm at issue in the State of Texas when he visited Plaintiff Charles Hanor in San Antonio, Texas in February 2014, and the lease was renewed in 2015 and 2016.

40.    From its inception in February 2014 through the present, the partnership agreement between Defendant Dicky Hanor and Plaintiff Charles Hanor has been performed in substantial part in San Antonio, Texas, as Dicky has regularly, systematically, and continuously sent, or caused to be sent invoices, bills, and statements for expenses of Plaintiff Charles Hanor to pay and reports on crop sales and payments to Plaintiff Charles Hanor in Bexar County, San Antonio, Texas.

41.    Defendant Dicky Hanor negotiated and entered into the partnership agreement to lease the Hanor Farm at issue in the State of Texas when he visited Plaintiff Charles Hanor in San Antonio, Texas in February 2014 and the partnership agreement was renewed each year from 2014 to 2019.

42.    From the inception of the agency agreement on the Hanor Farm in February 2014 through the present, the agency agreement between Defendant Dicky Hanor and Plaintiff Charles Hanor has been performed in substantial part in San Antonio, Texas, as Dicky Hanor and his agents have regularly, systematically and continuously sent, or caused to be sent, invoices, bills, and statements for expenses of Plaintiff Charles Hanor to pay and reports on crop sales and payments to Plaintiff Charles Hanor in San Antonio, Texas.

43.    Defendant Dicky Hanor negotiated and entered into the agency agreement to lease the Hanor Farm at issue in the State of Texas when he visited Plaintiff Charles Hanor in San Antonio, Texas in February 2014, and the partnership agreement was renewed each year from 2014 through 2019.

44.     Plaintiff did not and could not discover the misrepresentations, under payments, over charges and concealed leases by Dicky Hanor until 2017.

45.     This case involves the Hanor Farm which comprises about 834 acres of the finest and most fertile farmland in the world with an unlimited water supply and water table about twenty (20) feet deep.

46.     Plaintiff Charles Hanor and Defendant Dicky Hanor were born and raised on the Hanor Farm in 1947 and 1943, respectively.

47.     Defendant Dicky Hanor returned to the Hanor Farm after graduating from the University of Missouri with a degree in Agriculture Economics in 1966 and took over the Hanor Farm in about 1971.

48.     Plaintiff Charles Hanor lived and worked on the Hanor Farm from August 6, 1947 until May of 1970.

49.     Defendant Dicky Hanor lived and worked on the Hanor Farm from August 18, 1943 until the present.

50.     In May of 1970 Plaintiff Charles Hanor moved to Washington DC and began working full time in the United States Patent and Trademark Office while he attended George Washington University Law School at night and later worked as a technical advisor for the United States Court of Appeals for the Federal Circuit.

51.     Plaintiff Charles Hanor been a permanent and continuous resident of Texas since 1975.

52.     Defendant Dicky Hanor is the brother of Plaintiff Charles Hanor.

IV.    REAL FARMLAND PROPERTY OWNED AND CO-OWNED BY PLAINTIFF AND DEFENDANT

53.    Elbert Curry Hanor (hereinafter "Elbert Hanor") died February 17, 1978 and Defendant Dicky Hanor continued leasing the Hanor Farm.

54.    Elbert Hanor died testate. His will was dated May 30, 1973.

55.    Elbert Hanor and Rita Irene Hanor (also known as Irene Knupp Hanor, hereinafter "Irene Hanor"), parents of siblings Plaintiff Charles Hanor and Defendant Dicky Hanor, owned the following subject farmland in Southeast Missouri and the listed properties are divided into tracts and the surname following each Tract No. is the name of the prior owner and the tracts were divided in Elbert Hanor's will as follows:

RITA IRENE HANOR LIFE ESTATE:

TRACT 1: Stewart Farm 80 acres. The West Half (W 1/2) of the Southeast Quarter (SE 1/4) of Section Six (S6), Township Twenty-five North (T2SN), Range Sixteen East (R16E) of the Fifth Principal Meridian.

TRACT 2: Knupp South, 38 acres. The Northwest Quarter (NW 1/4) of the Southwest Quarter (SW 1/4) of Section Nine (S9), Township Twenty-five North (T2SN), Range Sixteen East (R16E) of the Fifth Principal Meridian, except the Graveyard as now used in the Southeast corner of said quarter (1/4), containing two (2) acres, more or less.

TRACT 3: Knupp 40 acres. The South One-half (S 1/2) of the West Half (W 1/2) of the Northwest Quarter (NW 1/4) of Section Nine (S9), Township Twenty-five North (T2SN), Range Sixteen East (R16E) of the Fifth Principal Meridian.

TRACT 4: Knupp North 40 acres. The North One-half (N 1/2) of the West Half (W 1/2) of the Northwest Quarter (NW 1/4) of Section Nine (S9), Township Twenty-five North (T2SN), Range Sixteen East (R16E) of the Fifth Principal Meridian.

TRACT 5: McDowell Farm, 160 acres. The Southeast Quarter (SE 1/4) of Section One (Sl), Township Twenty-five North (T2SN), Range Fifteen East (RISE) of the Fifth principal Meridian.

TRACT 6: - Emory Farm, North 40 acres. All of the Southeast Quarter (SE 1/4) Quarter (SE 1/4) of Section Two (S2), Township (T2SN), Range Fifteen East

(RISE) of the Meridian. of the Southeast Twenty-five North Fifth Principal Meridian

TRACT 7 - Emory Farm, South 40 acres. The Northwest Quarter of the Northwest Quarter of Section 12, Township 25, Range 15.

<u>RITA IRENE HANOR FEE SIMPLE:</u>

TRACT 8: Chambers Farm 30 acres. All of the southeast quarter of the northwest quarter of Section 9, Township 25 North, Range 16 East, except the east two hundred eighty-seven and one half (287 ½ ) feet thereof, being a tract of thirty (30) acres, more or less.

TRACT 9: Patrick Farm, 38 acres - A tract of land containing 38 acres, more or less, and described as follows: All of the Northeast Quarter of the Northwest Quarter of Section 9, Township 25 North, Range 16 East of the 5th Principal Meridian, excepting a 2 acre tract, more or less and described as follows: BEGINNING AT THE center of public road at the Southeast corner of the Northeast quarter of the Northwest Quarter of said section, township and range, and running thence North a distance of 303.02 feet to a point, running thence West at right angles a distance of 287.5 feet to a point; thence south at right angles a distance of 303.02 feet to a point; thence east at right angles a distance of 287.5 feet to point of beginning.

TRACT 10 - Barnett Farm, 168 acres. The West Half of the Southeast Quarter and the East Half of the Southwest Quarter in Section 34, Township 26 North, Range 15 East of the 5th Principal Meridian, containing 168 acres, more or less, subject to easements of roads, drains and utilities.

TRACT 11 - Poor Farm, 80 acres. The North One-Half of the Southeast Quarter of Section 35, Township 26 North, Range 15 East of the 5th Principal Meridian

TRACT 12 - Poor Farm, 40 acres. The Northeast Quarter of the Southeast Quarter of Section 34, Township 26 North, Range 15 East of the 5th Principal Meridian.

TRACT 13 - Kendall Farm, 40 acres. All of the Southeast Quarter of the Southwest Quarter of Section 1, Township 25 North, Range 15 East of the 5th Principal Meridian.

The listed properties are divided into TRACTS and the surname following each Tract No. is the name of the prior owner. The Knupp tracts were purchased by Elbert Hanor from John and Lulu Dell Knupp, the parents of Rita Irene Hanor and have been owned by the Hanor and Knupp families for over 100 years.

56.    In his will, Elbert Hanor left 396 acres of his farmland to his wife, Irene Hanor, in fee simple and 438 acres to her as a life estate with the remainder to their sons, Plaintiff Charles Hanor and Defendant Dicky Hanor.

57.    In the will of Elbert Hanor, his sons Dicky Hanor and Charles Hanor were treated evenly and equally.

58.    Both Elbert Hanor and Irene Hanor had not been treated equally and evenly by their parents with regard to their siblings and were so motivated to treat their sons evenly and equally. Their primary goal was to avoid the hard feelings between siblings that would have resulted if one had been favored over the other and received more than an equal share of the estate.

59.    Since 1978, Plaintiff Charles Hanor had an undivided remainder interest in about 417 acres of the Hanor Farm.

60.    In 1978, Elbert Hanor died and left his farmland and other assets to his wife, Irene Hanor.

61.    One-half of the land was bequeathed to Irene Hanor in fee simple, and the other half was bequeathed to her as a life estate with the remainder to Plaintiff Charles Hanor and Defendant Dicky Hanor in equal, undivided shares.

62.    In about 1992, Irene Hanor gifted eighty (80) acres of the following tract of the Hanor Farm to Defendant Dicky Hanor to provide him with sufficient collateral to buy an additional 320 acres of farmland in adjacent New Madrid county that was titled in Defendant Dicky Hanor's name alone.

>       TRACT 11 - Poor Farm, 80 acres. The North One-Half of the Southeast Quarter of Section 35, Township 26 North, Range 15 East of the 5th Principal Meridian.

13

63.    A condition of the transfer was that Defendant Dicky Hanor would continue to pay Irene Hanor rent on the transferred eighty (80) acres for her lifetime.

64.    On November 17, 1999, Irene Hanor created a revocable living trust agreement (hereinafter referred to as "Irene Hanor Trust") to dispose of her property and portion of the Hanor Farm upon her death.

65.    The Irene Hanor Trust provided that upon Irene Hanor's death, her seven (7) tracts of land in Mississippi County, Missouri, would pass equally in undivided interests to Plaintiff Charles Hanor and Defendant Dicky Hanor as life estates, with the remainder in fee simple to the descendants of Plaintiff Charles Hanor and Defendant Dicky Hanor, per stirpes.

66.    Irene Hanor entered into a First Amendment to Trust Agreement, dated July 11, 2006.

67.    The 2006 amendment to the 1999 trust carved out eighty (80) acres of land for Plaintiff Charles Hanor, to compensate for the eight (80) acres of land previously given to Defendant Dicky Hanor in 1992, as follows:

D.    If Charles W. Hanor survives the Settlor, the following described real estate located in Mississippi County, Missouri, to wit:

The North Half (N 1/2) of the Southeast Quarter (SE 1/4) of Section Thirty-four (S34), Township Twenty-six North (T26N),Range Fifteen East (R15E).

Together with a perpetual non-exclusive road easement over and across the East twenty feet (20 ') of the Southwest Quarter (5W 1/4) of the Southeast Quarter (SE 1/4) of said Section Thirty-four (S34), Township Twenty-six North (T26N), Range Fifteen East (R15E).

shall be distributed to Charles W. Hanor for and during his natural life with the remainder in fee simple to such of the lineal descendants of Charles W. Hanor as shall survive the Settlor, in equal shares per stirpes, outright and free of trust except as provided in ARTICLE V hereof.

68.    All of the Hanor Farm that was given in fee simple to Irene Hanor in the Elbert Hanor will was distributed in the Irene Hanor Trust to Plaintiff Charles Hanor and Defendant Dicky Hanor for their lives with the remainder to their four (4) daughters.

69.    The Irene Hanor Trust provided for distribution of the land to Plaintiff Charles Hanor and Defendant Dicky Hanor, which was accomplished approximately a month after Irene Hanor's death through a Trustees' Special Warranty Deed.

70.    A Trustees' Special Warranty Deed was prepared by Reginald E. Young on February 21, 2014, transferring the seven (7) aforementioned tracts of land in Mississippi County, Missouri, from the trust to Plaintiff Charles Hanor and Defendant Dicky Hanor.

71.    Plaintiff Charles Hanor has two (2) daughters, Serena Louise Hanor Aldrich, born December 25, 1983 in San Antonio, Texas, and Helena Marie Hanor, born December 1, 2004 in San Antonio, Texas.

72.    Serena Louise Hanor Aldrich and Helena Marie Hanor have a remainder interest in the Hanor Farm under the Irene Hanor Trust and the distribution deeds dated February 2014.

73.    The last paragraph of article VI of the Irene Hanor Trust (p. 8) allowed Defendant Dicky Hanor, as a successor Co-Trustee or as the sole successor Trustee, to rent the farmland owned by the trust to Defendant Dicky Hanor "on terms customary for the area."

74.    Irene Hanor died on January 6, 2014, survived by her sons, Plaintiff Charles Hanor and Defendant Dicky Hanor.

75.    The remainder interest in the Hanor Farm from Elbert Hanor vested fee simple in undivided interest to Plaintiff Charles Hanor and Defendant Dicky Hanor on January 6, 2014.

76.    The title to the property of Irene Hanor was recorded in the names of Plaintiff Charles Hanor and Defendant Dicky Hanor by warranty deed dated February 21, 2014.

77.    Irene Hanor was adamant that no Hanor land would be sold by Plaintiff Charles Hanor and Defendant Dicky Hanor.

78.    By naming her then two-year-old granddaughter, Helena Marie Hanor, as a remainderman beneficiary, Irene Hanor made it near impossible for Plaintiff Charles Hanor and Defendant Dicky Hanor to dispose of Irene Hanor's part of the Hanor Farm during the lifetimes of Plaintiff Charles Hanor and Defendant Dicky Hanor and minority of Helena Marie Hanor.

79.    It was the wish and plan of Irene Hanor that her land was not to be sold or divided by Dicky Hanor and Charles Hanor and that it pass to her four granddaughters.

80.    Notwithstanding this in 2016, Defendant Dicky Hanor demanded that the co-owned Hanor Farm be separated into divided tracts between Plaintiff Charles Hanor and Defendant Dicky Hanor.

81.    Defendant Dicky Hanor's land division demand gave Defendant Dicky Hanor 332.53 acres of the best land and gave Plaintiff Charles Hanor 306.35 acres of the less desirable land. This gave Defendant Dicky Hanor at least $261,800.00 more than Plaintiff Charles Hanor.

82.    The land division demand also required Charles Hanor to pay Dicky Hanor over $100,000.00 for fixtures on the land, namely pivot irrigation units..

83.    Defendant Dicky Hanor was outraged that Plaintiff Charles Hanor would not give him about $391,150.00 in 2016 to divide up the Hanor Farm with Defendant Dicky Hanor receiving the most land and best land and over $100,000.00 case in addition and lambasted Plaintiff Charles Hanor for not submitting to the unfair terms.

84.    Defendant Dicky Hanor also told Plaintiff Charles Hanor that Elbert and Irene Hanor "should never have given [Plaintiff Charles Hanor] one-half of the land" and that Plaintiff

16

Charles Hanor "did not deserve one-half the land because [Defendant Dicky Hanor] farmed the land for over forty (40) years."

## V. THE FIXTURES OF REAL PROPERTY CO-OWNED BY PLAINTIFF AND DEFENDANT

85.     At the same time of the land division proposal, Defendant Dicky Hanor claimed ownership of fixtures on the land, namely the essential pivot irrigation units on each tract of the Hanor Farm and demanded that Plaintiff Charles Hanor pay him $129,350.00 for five pivot irrigation units that had been constructed and affixed on the Hanor land tracts over twenty (20) years before.

86.     The water table in Southeast Missouri is about twenty (20) feet and using eight sixteen (16) inch wells at 125 feet deep, 4000 gallons a minute can be pumped from each of the wells, 24 hours a day and 365 days a year.

87.     Furthermore, the Hanor Farm was graded for flood irrigation in the 1960s and 1970s, so that in the event of a flooding rainfall, excess water flows to the lower end of the 1,200 feet, so only the lower 100 feet of each tract is compromised. In simple terms, it is near impossible to entirely lose a crop from flooding on the sandy loam tracts of the Hanor Farm.

88.     The land grading and pivot irrigation units and wells and pumps installed on the farmland owned by Elbert Hanor and Irene Hanor were paid for by Elbert Hanor and Irene Hanor.

89.     The pivot irrigation units on the Hanor Farm are fixtures just like the houses, fences, gates, grain bins, barns, sheds, silos, wells, downhole turbine pumps, and electrical wiring installed and built on the Hanor Farm.

90.     The pivot irrigation units on the Hanor Farm are essential to the farming and leasing of the farmland.

91.     The pivot irrigation units on the Hanor Farm are secured to permanent concrete pads or foundations and include underground pipes and wiring that cannot be moved.

92.     As a practical matter, one cannot sell and move twenty-plus (20+) year old pivot irrigation units.

93.     Selling, moving, and relocating the 1,200 feet long overhead pipes and seven or so wheeled support towers of the twenty-plus (20+) year old pivot irrigation units is not a reasonable action and no one would pay anything for these decades-old pivot irrigation units other than metal salvage value, which is insignificant.

94.     As a practical matter, the land is not rentable or farmable without irrigation pivot units.

95.     A requirement of potato, watermelon, and horse radish leases on the Hanor Farm is that the landowner provide working pivot irrigation units for the lessees to operate.

96.     Removing the pivot irrigation units would significantly devalue the farmland and they would have to be replaced.

97.     No prudent farmer would risk the hundreds of thousands of dollars to plant a crop each year without pivot irrigation units.

98.     No prudent lessee would lease the Hanor Farm to plant a crop each year without pivot irrigation units.

99.     Owners must furnish lessees with fully operational pivot irrigation units.

100.    Owners have to pay for pivot irrigation unit repairs or maintenance. Repairs and Maintenance of pivot irrigation units are a necessary expense of farmland ownership.

101.    Defendant has treated Plaintiff as an owner of the pivot irrigation units and other fixtures from 2014 to present.

102.    Defendant Dicky Hanor sent Plaintiff Charles Hanor invoices for and Plaintiff Charles Hanor paid for half of all repairs and maintenance and replacement parts for all of the pivot irrigation units from 2014 to present.

103.    Since 2017, Milas Mainord has treated Plaintiff and Defendant as Co-owners of the pivot irrigation units and billed Charles Hanor for his share of the repairs.

104.    Since 2017, Milas Mainord of MRM FARMS, the current lessee of the Hanor Farm, has charged Plaintiff Charles Hanor for and Plaintiff Charles Hanor has paid for half of the cost of repairs, maintenance, and repair parts on the pivot irrigation units.

105.    Defendant Dicky Hanor rented the Hanor farmland from Irene Hanor from 1978 until her passing on January 6, 2014 and from Charles Hanor from 2014 to 2016.

106.    In 2009, Irene Hanor reported $60,362 in farm-related gross income on her 2009 IRS Form-1040. Irene Hanor also reported $57,324 in expenses. Her net rental income on 834 acres was $3,038, or $3.64 net rent per acre.

107.    In 2010, Irene Hanor reported $63,669 in farm-related gross income on her 2010 IRS Form-1040.  Irene Hanor also reported $65,798 in expenses. Her net rental income on 834 acres was -$2,129, or -$2.55 net loss per acre.

108.    Crop yields in 2009 and 2010 were normal and the "rent" payments made by Defendant Dicky Hanor to Irene Hanor were essentially nothing, far less than "terms customary for the area" on the revenue earned on these crops.

109.    Irene Hanor paid the taxes on the Hanor Farm until her death in 2014.

110.    These prior lease payments for less than the amount of rent owed show that Defendant Dicky Hanor has engaged in a continued and systematic pattern of misrepresenting income and expenses to the owner of the farmland.

111.    Defendant Dicky Hanor has a long-established pattern of not paying the landowner rent "customary for the area."

112.    Defendant Dicky Hanor has not paid Plaintiff Charles Hanor rent "customary for the area."

113.    Defendant Dicky Hanor has a long-established pattern of charging the landowner lessor more than landowner's share of the expenses.

114.    Defendant Dicky Hanor has a long-established pattern of paying the landowner less than landowner's share of the revenues.

115.    From 1995 to 2014, Defendant Dicky Hanor received $1,020,604.00 in USDA subsidies, whereas Irene Hanor received only $169,301.00 on the 834 acres of land that she owned.

116.    This abuse of trust and confidence and breach of fiduciary duty by Defendant Dicky Hanor over many years establishes a history of this kind of behavior.

## VI.    FACTUAL HISTORY OF BUSINESS INTERACTIONS IN TEXAS BETWEEN PLAINTIFF AND DEFENDANT

117.    Charles W. Hanor became an owner and co-owner of the farms in suit when his mother died on January 6, 2014, according to the terms of Elbert Hanor's and Irene Hanor's respective wills.

### The Parties Meet All of the Elements of a Partnership

118.    Charles and Dicky Hanor are the co-owners of all but two of the tracts of land comprising the Hanor Farm.

119.    In February 2014, Plaintiff Charles Hanor and Defendant Dicky Hanor met in San Antonio, Texas.

20

120.    The oral agreement between Plaintiff and Defendant was definite concerning the lands owned and co-owned by Plaintiff Charles Hanor.

121.    The oral agreement authorized Defendant Dicky Hanor to lease Plaintiff's solely owned and co-owned land on a crop share basis.  This is the oral crop share lease.

122.    In each subsequent year, until 2017, Plaintiff Charles Hanor and Defendant Dicky Hanor met in Bexar County, San Antonio Texas to discuss and renew their partnership and agency agreements.

123.    Dicky Hanor also traveled to Bexar County, San Antonio, Texas on business in March 2014 and met with Charles Hanor and discussed business relating to their crop share lease and partnership to lease the Hanor Farm to third party lessees.

124.    In addition to the oral crop share lease Defendant Dicky Hanor and Plaintiff Charles Hanor negotiated in Bexar County, San Antonio, Texas, Defendant Dicky Hanor and Plaintiff Charles Hanor entered into an agency agreement.

125.    Plaintiff Charles Hanor authorized Defendant Dicky Hanor to enter into cash rent leases with third party lessees to farm Plaintiff Charles Hanor's farmland by preparing the land for crops such as potatoes, watermelons, and horseradish; planting the land; paying all of the expenses; harvesting the crops; and paying a cash rent per acre for use of their farmland.

126.    The agency agreement between Plaintiff Charles Hanor and Defendant Dicky Hanor allowed Defendant Dicky Hanor to enter into cash rent leases with third party farmers on behalf of Plaintiff Charles Hanor to lease and farm Plaintiff Charles Hanor's solely owned land. The partnership agreement between Plaintiff Charles Hanor's and Defendant Dicky Hanor's co-owned farmland allowed Defendant Dicky Hanor to enter into cash rent leases as mentioned above. Under the separate agreements, the land was to be prepared for crops such as potatoes,

watermelons, and horseradish; crops were to be planted, irrigated, and harvested; and cash rent per acre for use of their farmland was payable in proportionate shares to Plaintiff Charles Hanor.

127.    Defendant Dicky Hanor or his agent's sent Plaintiff Charles Hanor invoices, bills, and statements for and Plaintiff Charles Hanor paid his share of all expenses for operating the Hanor farm from 2014 to present.

128.    Between 2014 and 2016, Plaintiff Charles Hanor performed his part of the oral partnership agreement.

129.    Plaintiff Charles Hanor sent checks to Defendant Dicky Hanor for his share of the Hanor Farm expenses involving co-owned tracts of land that had been leased out by Defendant, Dicky Hanor in response to the bills and statements Charles Hanor received in San Antonio, Texas.

130.    Between 2015 and 2016, Plaintiff entered or renewed his oral agency agreement with Defendant Dicky Hanor in Bexar County, San Antonio Texas.

131.    Between 2014 and 2016, Plaintiff Charles Hanor performed his part of the oral agency agreement from his home in Bexar County, San Antonio Texas.

132.    Plaintiff Charles Hanor paid for his expenses of the tracts of land he solely owned that had been leased out by his agent, Defendant Dicky Hanor.

133.    The Irene Hanor Trust was superseded by the Trustees' Special Warranty Deed, dated February 21, 2014, and the parties have not operated under the lease in the Irene Hanor Trust thereafter.

134.    Dicky Hanor intended to form a partnership with Plaintiff Charles Hanor.

135.    The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business.

136.     A partnership is an association of two or more persons to carry on as co-owners a business for profit.

137.     Partners shall render on demand true and full information of all things affecting the partnership to any partner.

138.     Every partner must account to the partnership for any benefit and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

139.     The partnership books shall be kept, subject to any agreement between the partners, at the principal place of business of the partnership, and every partner shall at all times have access to and may inspect and copy any of them.

140.     Partners shall render on demand true and full information of all things affecting the partnership to any partner.

141.     Partners are accountable as a fiduciary.

142.     Every partner must account to the partnership for any benefit and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

143.     Any partner shall have the right to a formal account as to partnership affairs.

144.     Defendant Dicky Hanor shared the profits and expenses of the joint venture to rent farmland co-owned by Plaintiff and Defendant to third party lessees so they could plant, till, irrigate and harvest certain crops, including and not limited to potatoes, horse radish and watermelons.

145.     Defendant Dicky Hanor continuously and systematically sent these profits and profit statements through the mail to Plaintiff Charles Hanor, residing in Bexar County, San Antonio Texas.

146.     The oral crop share lease and partnership that Plaintiff Charles Hanor agreed to and entered into in in February of 2014 was "on terms customary for the area."

147.     In 2017, Plaintiff Charles Hanor and Defendant Dicky Hanor agreed to and entered into an oral crop share lease of the entire Hanor Farm to Milas Mainord of MRM Farms on the same "terms customary for the area" that they had agreed to in 2014 for the Hanor Farm.

148.     Plaintiff Charles Hanor and Defendant Dicky Hanor have leased the Hanor Farm to Milas Mainord of MRM Farms from 2017 to the present on the same terms as the crop share lease of the Hanor Farm by Plaintiff Charles Hanor to Defendant Dicky Hanor from 2014-2016.

149.     Defendant Dicky Hanor leased and operated the Hanor farm as a crop share lessee, partner, and agent since around 1971 until he retired on December 31, 2016, quit farming, and sold all of his farming equipment and personal farm property.

150.     When Irene Hanor died in 2014, Plaintiff Charles Hanor had not farmed the Hanor Farm since 1970.

151.     Because of Defendant Dicky Hanor's far greater farming experience and expertise, Plaintiff Charles Hanor relied on his only sibling Defendant Dicky Hanor to manage the Hanor Farm and to treat Plaintiff Charles Hanor honestly and fairly.

152.     The distribution of the Hanor farmlands from their mother's estate occurred on February 21, 2014 as set forth in the Trustees' Special Warranty Deed, dated and signed February 21, 2014.

153.    Defendant Dicky Hanor traveled to San Antonio, Texas for his business in February 2014.

154.    Defendant Dicky Hanor also traveled to San Antonio, Texas for his business in March 2014.

155.    Defendant Dicky Hanor's Facebook page also shows that he traveled to San Antonio, Texas for business in March 2014.

156.    While Defendant Dicky Hanor was in San Antonio, Texas in February 2014, Plaintiff Charles Hanor, he negotiated and entered into a lease agreement for defendant Dicky Hanor's continued operation of the Hanor Farm.

157.    During the February 2014 meeting in San Antonio, Texas, Plaintiff Charles Hanor and Defendant Dicky Hanor negotiated and agreed that Defendant Dicky Hanor would continue farming the Hanor Farm "on terms customary for the area," including both the land that they owned jointly and the land that Plaintiff Charles Hanor was the sole owner of.

158.    During the February 2014 meeting in San Antonio, Texas, Plaintiff Charles Hanor and Defendant Dicky Hanor negotiated and agreed that they would continue leasing the land to third party lessees including both the land that they owned jointly and the land that Plaintiff Charles Hanor was the sole owner of.

159.    The agreement between Plaintiff Charles Hanor and Defendant Dicky Hanor was such that Defendant Dicky Hanor would farm all of the farmland and plant typical crops of corn, sorghum, milo, soybeans, and wheat.

160.    The agreement also made clear that Plaintiff Charles Hanor was to be compensated for crops grown on his farmland.

161.    Planning for farming planting begins in the prior fall and in January of each year because crops must be alternated and tracts of land for wheat, potatoes and corn must be selected ahead of planting.

162.    A farmer must plant wheat in the prior fall of the year it is harvested, so the wheat could be harvested in June and the ground replanted in soybeans.

163.    By April or May of each year, all of the corn, potatoes, some soybeans, and some other crops would have been planted.

164.    The only crop a farmer can typically plant in June or after are soybeans after the wheat tracts of land and potato tracts of land are harvested in June.

165.    By May of each year, Plaintiff Charles Hanor and Defendant Dicky Hanor would have invested several hundred thousands of dollars in fuel, machinery, labor, seed, fertilizer and herbicides and a reasonable and competent farmer would not do this on Plaintiff Charles Hanor's or anyone else's farmland, without a farm lease agreement already in place.

166.    On January 13, 2014, Defendant Dicky Hanor entered into a potato lease with Sowinski Farms, Inc. (hereinafter "Sowinski Farms")  and an undisclosed and concealed potato lease with Black Gold Farms, Inc. (hereinafter "Black Gold Farms").

167.    Defendant Dicky Hanor had to negotiate and enter into a lease with Plaintiff Charles Hanor in February 2014 when the land was transferred from the Irene Hanor Trust to Plaintiff Charles Hanor and Defendant Dicky Hanor.

168.    Defendant Dicky Hanor incurred more than $100,000.00 in expenses by May 1 of each crop year, so it was imperative that he have a lease on Plaintiff Charles Hanor's farmland before incurring the expenses.

169.    Planting of farm crops begins in around March or April of each year, depending on weather conditions.

170.    For crops such as corn, potatoes, watermelons, and horseradish, it is essential that they be planted no later than April.

171.    Wheat, potatoes, and watermelons are typically harvested before July 1 and the land is then planted in soybeans so that you can get in two crops for the year.

172.    Each co-owner of the property is entitled to share equally in profits resulting from cash renting said properties to third parties.

173.    As sole owners of some of the properties, each is entitled to all of the profits resulting from cash renting said solely owned properties to third parties.

174.    Plaintiff Charles Hanor had to rely on Defendant Dicky Hanor's far superior knowledge of farming.

175.    Plaintiff Charles Hanor trusted Defendant Dicky Hanor to treat Plaintiff Charles Hanor fairly and honestly.

176.    Defendant Dicky Hanor refuses to present accounting records showing all expenses and revenues for leasing of the Plaintiff Charles Hanor's farmland.

177.    The potato leases that were entered into on the Hanor farmland co-owned by Plaintiff Charles Hanor were never provided to Plaintiff Charles Hanor by Defendant Dicky Hanor.

178.    In 2017, Plaintiff Charles Hanor contacted Sowinski Farms to verify cash rent amounts for potatoes from the previous years and get copies of the agreements.

179.    Plaintiff Charles Hanor then became aware of concealed payments, inaccurate payments and misrepresented payments for potato rents made to Plaintiff Charles Hanor.

180.    Plaintiff Charles Hanor had no way of telling if the amounts included in the statements and invoices that Defendant Dicky Hanor or his agents sent to Plaintiff Charles Hanor at 207 Zambrano Road, San Antonio, Texas were accurate and complete, and had to completely rely on the honesty and integrity of the Defendant Dicky Hanor and his agents in their dealings.

181.    In January 2014, Defendant Dicky Hanor, acting as an agent for Plaintiff Charles Hanor, signed a cash rent lease, which was "customary for the area," with Sowinski Farms, where they rented Plaintiff Charles Hanor's and Defendant Dicky Hanor's jointly owned land to grow potatoes.

182.    All of the potato leases with Sowinski Farms and Black Gold Farms were such that the lessor was paid cash rent per acre, and the lessee paid all of the expenses and did all of the farm work.

183.    This cash rent lease required the lessee to pay for all fertilizer and fuel and electricity for irrigation and farm equipment and provide the labor and machinery and the costs of planting, irrigating, and harvesting the potatoes.

184.    It is customary in potato contracts for the landowner to keep all of the rent from the harvest of the potatoes and not share it with any mere crop share lessee for other crops that the crop share lessee plants, cultivates, irrigates, and harvests.

185.    The landowner and crop share lessee essentially do nothing with potatoes and are paid cash rent based on the number of acres in two payments and possibly an extra payment for harvesting the potatoes late.

186.    Defendant Dicky Hanor entered into a first potato cash rent lease January 13, 2014 to lease two (2) tracts of the Hanor Farm, jointly owned by Defendant Dicky Hanor and Plaintiff

28

Charles Hanor to Sowinski Farms on behalf of Plaintiff Charles Hanor. A true and correct copy of the 2014 Sowinski Farms potato lease is attached as Ex. A.

187.    Defendant Dicky Hanor leased 161.94 of co-owned irrigated acres at $450 per acre to Sowinski Farms who planted, cultivated, irrigated, and harvested the potatoes, which comes to a total rent of $72,873.

188.    The Sowinski lease, Ex. A, states that the lessee shall "prepare and plant the land" and the only obligation of the Lessors, Plaintiff Charles Hanor and Defendant Dicky Hanor was to "furnish Lessee during the term hereof with two (2) fully operational Self-Propelled Center Pivot Irrigation System. Said irrigation system is to be used by the Lessee on the land premises only. Lessor is to guarantee first rotation of system and warrants that the system is in good working order."

189.    The lessors only had to pay "in event the irrigation system requires repairs due to mechanical failure not caused by neglect or abuse by Lessee, then the Lessee shall pay one-half (1/2) of the cost of such repairs. If the irrigation system requires repairs because of neglect or abuse by Lessee, then Lessee shall pay the full cost of repairs."

190.    The Sowinski lease further provided that "Lessee to pay for the fuel or electric. The meter for the electricity to be left in the Lessor name and Lessee to pay all electric bills directly to the supplier when due."

191.    All of the Sowinski leases are standard and contain the same terms and conditions.

192.    Defendant Dicky Hanor was paid by the lessee for all irrigation electricity and diesel fuel by the potato and watermelon leasing companies.

193.    Defendant Dicky Hanor received extra payments for harvesting the potatoes late on the land of Plaintiff Charles Hanor.

29

194. Defendant Dicky Hanor kept all of the extra payments for harvesting the potatoes late on the land of Plaintiff Charles Hanor.

195. Plaintiff Charles Hanor was entitled to at least $36,436.50, half of the rent, from the 2014 contract with Sowinski Farms because Plaintiff Charles Hanor owns half of the property.

196. However, Defendant Dicky Hanor paid Plaintiff Charles Hanor $12,145.50 on May 24, 2014 and $12,183.00 on August 5, 2014 amounting to only $24,328.50.

197. Therefore, the amount presently owed to Plaintiff Charles Hanor from 2014 Sowinski Farms potato contracts alone is at least $12,108.00.

198. In 2014, Defendant Dicky Hanor entered into a watermelon lease with a company that Defendant Dicky Hanor refuses to identify and provide to Plaintiff Charles Hanor.

199. In 2014, Defendant Dicky Hanor sent Plaintiff Charles Hanor a check for $4,200.00 for a "watermelon lease."

200. The check for $4,200.00 for a "watermelon lease" was not for half of the watermelon rent proceeds.

201. Like the potato leases, the watermelon lessor did all of the work and paid all of the expenses and merely paid a cash rent per acre for leasing the Hanor Farm to grow watermelons.

202. Plaintiff Charles Hanor was entitled to half of the watermelon cash rent because Plaintiff Charles Hanor owns half of the property.

203. Defendant Dicky Hanor initially represented to Plaintiff Charles Hanor that he was sending half of the potato and watermelon total payments Defendant Dicky Hanor received to Plaintiff Charles Hanor.

204. Defendant Dicky Hanor misrepresented to Plaintiff Charles Hanor that the check was half of the watermelon rent.

30

205.    Defendant Dicky Hanor failed to pay Plaintiff Charles Hanor half of the watermelon cash rent.

206.    Defendant Dicky Hanor later represented to Plaintiff Charles Hanor that he was sending one-third of the potato and watermelon total payments Defendant Dicky Hanor received to Plaintiff Charles Hanor.

207.    Defendant Dicky Hanor paid Plaintiff Charles Hanor less than one-third of the total payments from the potato and watermelon leases that Defendant Dicky Hanor received.

208.    Defendant Dicky Hanor's payments to Plaintiff Charles Hanor being less than one-third of the total payments from the potato and watermelon leases that Defendant Dicky Hanor received was deliberate and intentional.

209.    The amounts paid under the potato leases by Defendant Dicky Hanor to Plaintiff Charles Hanor were not one-third of the total payments Defendant Dicky Hanor received.

210.    Plaintiff Charles Hanor is entitled to half the rent from all other cash crop contracts in 2014 on land owned and co-owned by Plaintiff Charles Hanor.

211.    Defendant Dicky Hanor sent a bill to Plaintiff Charles Hanor each year from 2014 to 2016 for what was represented as half of all irrigation electricity and diesel fuel used by the potato leasing companies, and Plaintiff Charles Hanor paid or Defendant Dicky Hanor deducted what he represented as half of the amount of fuel costs paid by the potato leasing company from Plaintiff Charles Hanor's potato rent check.

212.    The bill that Defendant Dicky Hanor sent to Plaintiff Charles Hanor each year from 2014 to 2016 was more than half of all irrigation electricity and diesel fuel used by the potato leasing companies, and Plaintiff Charles Hanor paid or Defendant Dicky Hanor deducted more

than half of the amount of fuel costs paid by the potato leasing company from Plaintiff Charles Hanor's potato rent check.

213.    Defendant Dicky Hanor also entered into a second potato lease on January 13, 2014 with Black Gold Farms on behalf of Plaintiff Charles Hanor, whereby a sixty-five and three-fifths (65.6) acre tract of farmland co-owned jointly by Defendant Dicky Hanor and Plaintiff Charles Hanor were leased to Black Gold Farms at $475.00 per acre for a total of $31,160.00 cash rent. A true and correct copy of the 2014 Black Gold Farms farm lease is attached as Ex. B.

214.    As equal co-owner of the land, Plaintiff Charles Hanor was entitled to half of the 2014 Black Gold potato rent which was $15,480.00.

215.    Defendant Dicky Hanor did not disclose the 2014 Black Gold Farms potato lease on Plaintiff Charles Hanor's co-owned land.

216.    Defendant Dicky Hanor kept the entire $31,160.00 received from Black Gold Farms paid for leasing Plaintiff Charles Hanor's land and paid Plaintiff Charles Hanor nothing.

217.    Plaintiff Charles Hanor did not become aware of the existence of the Black Gold Farms lease dated January 13, 2014 until 2017.

218.    Plaintiff Charles Hanor requested a copy of the Black Gold Farms lease from Defendant Dicky Hanor and Defendant refused to produce it.

219.    As half owner of the land, Charles was entitled to one-half of the 2014 potato rent which was $52,016.50 on the three tracts leased to the potato farms.

220.    Defendant Dicky Hanor mailed to Plaintiff Charles Hanor's home in San Antonio, Texas the 2014 payments of $12,145.50, when the potatoes were planted, and $12,183.00 when the potatoes were harvested, for a total of $24,328.50.

221.    The 2014 total amount received for potato rent was $104,033.00 which was $27,545.50 deficient and less than what Plaintiff Charles Hanor was entitled to receive.

222.    The first potato rent check was received by mail to Plaintiff Charles Hanor's home on May 24, 2014.

223.    Defendant Dicky Hanor represented to Plaintiff Charles Hanor in San Antonio, Bexar County, Texas on the potato rent checks of 2014 that were sent to Plaintiff Charles Hanor's home that each payment was for "1/2 Cash Rent Potatoes." A true and correct copy of the second potato rent check dated August 5, 2014 from 2014 is attached as Ex. C.

224.    Plaintiff Charles Hanor relied on Defendant Dicky Hanor's representations made to Plaintiff Charles Hanor at Plaintiff Charles Hanor's home that the two 2014 potato lease payments were for "1/2 Cash Rent Potatoes."

225.    Plaintiff Charles Hanor had no way of knowing that the representations made to Plaintiff Charles Hanor in San Antonio, Bexar County, Texas about the amounts of potato lease money received were less than "1/2 Cash Rent Potatoes" because Defendant Dicky Hanor never gave Plaintiff Charles Hanor the potato lease agreements.

226.    Defendant Dicky Hanor owed Plaintiff Charles Hanor $52,016.50 for Plaintiff Charles Hanor's share of the 2014 potato cash rent payments from the potato leases with Sowinski Farms and Black Gold Farms in 2014, and the $24,328.50 that Plaintiff Charles Hanor did receive from Defendant Dicky Hanor was short and deficient by $27,688.00.

227.    Defendant Dicky Hanor sent checks to Plaintiff Charles Hanor at his home in March and June of 2014 and represented that this was "1/2 Cash Rent Potatoes" but the actual amount sent was 23.99 percent of the cash rent potatoes and not the fifty (50) percent that was represented by Defendant Dicky Hanor.

33

228.    Defendant Dicky Hanor entered into two (2) potato leases in 2015 on five (5) tracts of land on the Hanor Farm with Sowinski Farms on behalf of Plaintiff Charles Hanor.

229.    A true and correct copy of the leases has been attached for Sowinski Fields 70, 71, and 85 and Sowinski Fields 67 and 121 as Ex. D. Defendant Dicky Hanor is the sole owner of field 85, but co-owns fields 67, 70, 71 and 121 with Plaintiff Charles Hanor.

230.    Defendant Dicky Hanor never provided Plaintiff Charles Hanor with either of these farm lease agreements.

231.    On February 5, 2015, Defendant Dicky Hanor asked Sowinski Farms, wherein a true and correct copy of this correspondence has been attached as Ex. E, to give him two separate checks for the 2015 potato rent as follows:

> To Whom it may concern,
>
> I, Dicky Hanor, do state that I prefer that my farm rent be written in two separate checks, one check made up of the total of the rent from fields 85 and 67, the other check from the fields 70, 71, and 121. I do realize that this splitting of checks will occur once in the spring and once again in late summer.
>
> Sincerely,
>
> Dicky Hanor

232.    The payments that Defendant Dicky Hanor mailed to Plaintiff Charles Hanor in San Antonio, Texas in 2015 were not "1/2 Cash Rent Potatoes" from these potato leases.

233.    A true and correct copy of the first check, dated March 3, 2015, for the amount of $11,866.00 of the second check dated July 29, 2015 for the amount of $11,866.00 has been attached as Ex. F.

234.    Plaintiff Charles Hanor and Defendant Dicky Hanor jointly own Sowinski Field Nos. 67, 70, 71 and 121, so Plaintiff Charles Hanor was entitled to receive half of the 2015 $97,265.50 rent paid by Sowinski Farms.

235.    Defendant Dicky Hanor represented to Plaintiff Charles Hanor at my address in San Antonio, Texas that the 2015 payments of $23,732.00 that Defendant Dicky Hanor paid Plaintiff Charles Hanor was half of the total lease payments, $48,632.75 but instead was 24.4% or $23,732.00.

236.    Plaintiff Charles Hanor trusted is brother Defendant Dicky Hanor and relied on the representations of Defendant Dicky Hanor that were made to Plaintiff Charles Hanor.

237.    Defendant Dicky Hanor owed Plaintiff Charles Hanor $48,632.75 for Plaintiff Charles Hanor's fifty (50) percent share of the potato cash rent payments from the leases with Sowinski Farms in 2015, and the $23,732.00 that Plaintiff Charles Hanor was sent by Defendant Dicky Hanor was deficient by $24,900.75.

238.    Defendant Dicky Hanor entered into a potato lease in 2016 with Sowinski Farms to lease fields 68, 110, and 117 on behalf of Plaintiff Charles Hanor, a true and correct copy of which has been attached as Ex. G. Defendant Dicky Hanor did not provide Plaintiff Charles Hanor with a copy of this lease.

239.    The 2016 Sowinski Farms potato lease included 162.19 acres of jointly owned land, fields 68 and 117, at $425.00 per acre, representing a total of $68,930.75 cash rent. As a joint owner of the 162.19 acres, Plaintiff Charles Hanor was to receive $34,465.38.

240.    The 2016 Sowinski Farms potato lease also included 65.6 acres of land owned solely by Plaintiff Charles Hanor, field 110, at $425.00 per acre. As the sole owner of this property, Plaintiff Charles Hanor was entitled to 100% of the entire $27,880.00 of cash rent.

241.    Defendant Dicky Hanor mailed two (2) checks to Plaintiff Charles Hanor's home for what he represented to be Plaintiff Charles Hanor's share of the potato cash rent, a true and

correct copy of the first check dated March 24, 2016 and the second check dated July 13, 2016 for a total of $28,270.13 has been attached as Ex. H.

242.    All of the checks that Plaintiff Charles Hanor received were sent to his home.

243.    Jean Hanor is a bookkeeper for Plaintiff Charles Hanor's businesses and household, and opens and processes all checks, deposits all checks, writes all checks, and pays all bills and does all payroll.

244.    When Defendant Dicky Hanor sent Plaintiff Charles Hanor the second check, Defendant Dicky Hanor made a calculation on the check representing that he was deducting $4,000.00 from the second check for "fuel from 2015 on irrigation."

245.    Defendant Dicky Hanor was not allowed to charge and deduct irrigation fuel expenses from Plaintiff Charles Hanor, as the farm lease with Sowinski Farms states the following: "Lessee to pay for fuel or electric." *See* Ex. I.

246.    Defendant Dicky Hanor was paid by Sowinski Farms for all irrigation fuel expenses and charged the same irrigation fuel expenses to Plaintiff Charles Hanor.

247.    Defendant Dicky Hanor owed Plaintiff Charles Hanor $65,845.00 for Plaintiff Charles Hanor's share of the 2016 potato cash rent payments from the leases with Sowinski Farms in 2016, and the $28,270.12 that Dicky sent to Plaintiff Charles Hanor was deficient by $37,575.25 and only 29.2 percent of the potato revenues on the Hanor Farmland that was either co-owned or solely owned by Plaintiff Charles Hanor.

248.    Defendant Dicky Hanor entered into a potato lease in 2017 with Sowinski Farms to lease 228.87 acres of land jointly owned by Plaintiff Charles Hanor and Defendant Dicky Hanor, fields 67, 70, 71, and 121, on behalf of Plaintiff Charles Hanor and the 71.37 acres of land owned solely by Defendant Dicky Hanor (Sowinski Field 85). *See* Ex. I.

249.    Defendant Dicky Hanor never provided Plaintiff Charles Hanor with a copy of this lease.

250.    Defendant Dicky Hanor mailed two (2) checks to Plaintiff Charles Hanor at his home in 2017 for what Defendant Dicky Hanor represented to be Plaintiff Charles Hanor's share of the potato cash rent from the 2017 Sowinski Farms potato lease, a true and correct copy of the first check, dated February 2, 2017, for $11,168.00 and a true and correct copy of the second check, dated July 23, 2017, for $11,277.33 has been attached as Ex. J.

251.    Along with the first and second check, Ex. J, Defendant Dicky Hanor included a report representing that Defendant Dicky Hanor was paying Plaintiff Charles Hanor one-third of the potato cash rent. A true and correct copy of this report has been attached as Ex. K.

252.    Defendant Dicky Hanor represented in this report, Ex. K, that only fields 70, 71, and 121 were being leased to Sowinski Farms, and omitted the fact that field 67 was included in the 2017 lease.

253.    Defendant Dicky Hanor owed Plaintiff Charles Hanor $45,774.00 for Plaintiff Charles Hanor's share of the potato cash rent payments from the leases with Sowinski Farms in 2017, and the $22,445.33 that Defendant Dicky Hanor sent to Plaintiff Charles Hanor's home was deficient by $23,328.67.

254.    Defendant Dicky Hanor represented to Plaintiff Charles Hanor that he was paying Plaintiff Charles Hanor half of the potato rent but instead only paid Plaintiff Charles Hanor 24.52 percent of the potato rent on farmland co-owned by Plaintiff Charles Hanor.

255.    Defendant Dicky Hanor signed a potato lease in 2018 with Sowinski Farms to lease 162.19 acres of land jointly owned by Plaintiff Charles Hanor and Defendant Dicky Hanor, fields

68 and 117, at $400 an acre, a true and correct copy of this lease has been attached as Ex. L. Defendant Dicky Hanor never provided Plaintiff with a copy of this lease.

256.    As co-owner of the properties leased to Sowinski Farms in 2018, Charles Hanor was entitled to receive half of the $64,876.00 in potato cash rent paid to Defendant Dicky Hanor, which would have been $32,438.00.

257.    Instead of sending Plaintiff Charles Hanor half of the potato cash rent in 2018, Defendant Dicky Hanor sent Plaintiff Charles Hanor a check totaling $21,625.34, a true and correct copy of which is attached as Ex. M.

258.    Defendant Dicky Hanor owed Plaintiff Charles Hanor $32,438.00 for Plaintiff Charles Hanor's share of the potato cash rent payments from the leases with Sowinski Farms in 2018, and the $21,625.34 that received from Defendant Dicky Hanor was deficient by $10,812.88.

259.    Defendant Dicky Hanor signed a potato lease in 2019 with Sowinski Farms to lease 168.34 acres of land jointly owned by Plaintiff Charles Hanor and Defendant Dicky Hanor, fields 68 and 117, at $400 an acre. A true and correct copy of this lease has been attached as Ex. N. Defendant Dicky Hanor never provided Plaintiff with a copy of this lease.

260.    As co-owner of the properties leased to Sowinski Farms, Plaintiff Charles Hanor was entitled to receive half of the $67,376.00 in potato cash rent paid to Defendant Dicky Hanor, which would have been $33,600.00.

261.    Instead of sending Plaintiff Charles Hanor half of the potato cash rent in 2019, Defendant Dicky Hanor sent Plaintiff Charles Hanor checks totaling $23,453.67, a true and correct copy of which is attached as Ex. O.

262.    Defendant Dicky Hanor owed Plaintiff Charles Hanor $27,688.00 for Plaintiff Charles Hanor's share of the potato cash rent payments from the leases with Sowinski Farms in

2019, and the $21,625.34 that Plaintiff Charles Hanor did receive from Defendant Dicky Hanor was deficient by $10,234.33.

263.    Defendant Dicky Hanor has only paid Plaintiff Charles Hanor 27.28 percent of the potato rents from 2014 to 2019.

264.    Plaintiff Charles Hanor demanded that he receive the amounts to which he is entitled, which includes half of the gross rent for the potato leases on jointly owned land from 2014 to 2019 and 100 percent of the gross rent for the potato leases on land owned solely by Plaintiff Charles Hanor from 2014 to 2019.

265.    Defendant Dicky Hanor did not pay Plaintiff Charles Hanor any rental income for any of the sorghum he grew on the Hanor Farm in Mississippi County.

266.    Defendant Dicky Hanor refused to give Plaintiff Charles Hanor half, or even one-third, of the gross rent for potato leases on jointly owned land and 100 percent of the gross rent for potato leases on land owned solely by Plaintiff Charles Hanor.

267.    Defendant Dicky Hanor told Plaintiff Charles Hanor that he was "greedy" and did not deserve half of the gross rent for potato leases on jointly owned land and 100 percent of the gross rent for potato leases on land owned solely by Plaintiff Charles Hanor.

268.    Defendant Dicky Hanor never sent any of the third-party lease agreements for the Hanor Farm to Plaintiff Charles Hanor from 2014 through 2019.

269.    In 2016, Defendant Dicky Hanor retired from farming, and thereafter, Plaintiff Charles Hanor and Defendant Dicky Hanor leased their land to third-party crop share farm lessees.

270.    The potato leases from 2017 to 2019 were separate from the third-party crop share farm leases and Defendant Dicky Hanor and Plaintiff Charles Hanor did not share any of the potato rent with the third-party crop share farm lease tenants.

271.     The amounts for potato cash rent that Defendant Dicky Hanor received and amounts mailed to Plaintiff Charles Hanor at 207 Zambrano Road, San Antonio, Texas 78209 were as follows for the years 2014 to 2020, as shown in Exs. A–O:

|  | Total Potato Rent | Plaintiff's Share | Plaintiff Paid | Plaintiff Owed | % Paid to Plaintiff |
|---|---|---|---|---|---|
| 2014 | $104,033.00 | $    52,016.50 | $24,328.50 | $    27,688.00 | 23.39% |
| 2015 | $  97,265.50 | $    48,632.75 | $23,732.00 | $    24,900.75 | 24.40% |
| 2016 | $100,310.75 | $    50,155.38 | $28,270.13 | $    21,885.25 | 28.18% |
| 2017 | $  91,548.00 | $    45,774.00 | $22,445.33 | $    23,328.67 | 24.52% |
| 2018 | $64,876.00 | $    32,438.00 | $21,625.12 | $    10,812.88 | 33.33% |
| 2019 | $67,376.00 | $    33,688.00 | $23,453.67 | $    10,234.33 | 34.81% |
| 2020 | $27,268.00 | $    13,634.00 | $9,089.33 | $      4,544.67 | 33.33% |
| 2014-2020 | **$552,677.25** | **$    276,338.63** | **$152,944.08** | **$ 123,394.55** | **27.67%** |

272.     Defendant Dicky Hanor represented that he was paying Plaintiff Charles Hanor fifty (50) percent of the potato rent which would have been $276,338.63.

273.     The actual amount paid by checks sent to Plaintiff Charles Hanor at his home at 207 Zambrano Road, San Antonio, Texas 78209 was $152.994.08 or 27.678 percent.

274.     Defendant Dicky Hanor started renting the land of Plaintiff Charles Hanor in January of 2014 and ceased renting the Hanor Farm on December 31, 2016.

275.     Defendant Dicky Hanor sent numerous checks, bills, and reports to Plaintiff Charles Hanor in San Antonio, Texas each year from 2014 to 2016 when he was renting the farmland owned by Plaintiff Charles Hanor and Plaintiff Charles Hanor paid all of the bills he received from the farming operation of Defendant Dicky Hanor from San Antonio, Texas.

276.     Plaintiff Charles Hanor did not have any contact with the agent vendors of Defendant Dicky Hanor for his farming business and Defendant Dicky Hanor was the only contact with the agent vendors and Defendant Dicky Hanor instructed the agent vendors the amounts to bill Plaintiff Charles Hanor.

40

277.    From 2014 to 2016, Defendant Dicky Hanor was renting the land of Plaintiff Charles Hanor and instructed his agents, the Hanor Farm vendors, to send Plaintiff Charles Hanor bills for Plaintiff Charles Hanor's share of the fertilizer expenses at 207 Zambrano Road, San Antonio, Texas 78209 as follows:

| Charles Hanor Fertilizer | |
|---|---|
| 2014 | $32,591.32 |
| 2015 | $55,477.63 |
| 2016 | $48,140.47 |

278.    After 2016, Defendant Dicky Hanor was not renting the land of Plaintiff Charles Hanor and the new renter and same vendor, Milas Mainord of MRM farms, sent Plaintiff Charles Hanor bills for only Plaintiff Charles Hanor's share of the farm expenses at 207 Zambrano Road, San Antonio, Texas 78209 as follows:

| Charles Hanor Fertilizer | |
|---|---|
| 2017 | $21,938.86 |
| 2018 | $17,660.66 |
| 2019 | $15,352.00 |

279.    The cost and sources of farm services and products that make up Plaintiff Charles Hanor's Farm Expenses did not appreciably change during the years 2014 to 2019 and the only significant change was the person renting the Hanor Farm and instructing the agent vendors the amount to bill and pay Plaintiff Charles Hanor.

280.    For the entire 834-acre Hanor Farm that Defendant Dicky Hanor rented from 2014 to 2016 on a one-third crop share basis, Plaintiff Charles Hanor would have paid one-sixth of the total expenses and received one-sixth of the total income on the entire 834-acre Hanor Farm because the expenses and revenues were for the total farm and not divided by ownership and tract.

281.    Instead, Defendant Dicky Hanor charged Plaintiff Charles Hanor and instructed vendors to send bills to Plaintiff Charles Hanor at 207 Zambrano, San Antonio, Texas 78209 in 2014 to 2016 for at least one-third of the expenses on the entire 834 acres even though Plaintiff Charles Hanor only owed one-sixth of the expenses and was paid one-sixth of the crop share income by Defendant Dicky Hanor on the 834 acres.

282.    From 2014 to 2016 Defendant Dicky Hanor sent or had his agents send to Plaintiff Charles Hanor at 207 Zambrano Road, San Antonio, Texas statements for $136,209.42 for fertilizer expenses on the 834-acre Hanor Farm.

283.    The farm rental agreement that Plaintiff Charles Hanor and Defendant Dicky Hanor have with the current lessee of the Hanor Farm, Milas Mainord of MRM Farms, since 2017 to the present does not share any of the potato rent with Milas Mainord.

284.    From 2017 to 2019 Milas Mainord, the new third-party lessee, sent or had his agents send to Plaintiff Charles Hanor at 207 Zambrano Road, San Antonio, Texas statements for a total of $54,951.52 for fertilizer expenses on the 834-acre Hanor Farm.

285.    The price of fertilizer and amount used on the Hanor Farm from 2014 to 2019 did not appreciably change, so the charges should have been about the same.

286.    The fertilizer statements that Defendant Dicky Hanor sent or had his agents send to Plaintiff Charles Hanor in 2014 to 2016 were about $81,257.90 more than Plaintiff Charles Hanor owed and paid.

287.    The fertilizer statements that Defendant Dicky Hanor sent or had his agents sent to Plaintiff Charles Hanor from 2014 to 2016 were inaccurate and overcharged Plaintiff Charles Hanor.

288.    Defendant Dicky Hanor knew that the fertilizer statement he sent or had his agents send to Plaintiff Charles Hanor in 2014 to 2016 were inaccurate and overcharged Plaintiff Charles Hanor.

289.    Beginning in 2017, Milas R. Mainord II and MRM AG Services, INC. dba MRM Farms, LLC rented the farmland owned by Plaintiff Charles Hanor and Defendant Dicky Hanor.

290.    The lease for the rented farmland allows Plaintiff Charles Hanor and Defendant Dicky Hanor to receive 100 percent of the potato revenue on the land they own.

291.    The lease for the rented farmland allows Plaintiff Charles Hanor and Defendant Dicky Hanor to receive one-third of the revenues and pay one-third of the fertilizer and irrigation operating cost comprising diesel and electricity.

292.    Milas R. Mainord II and MRM AG Services, INC. dba MRM Farms, LLC would not have entered into this contract with Plaintiff Charles Hanor and Defendant Dicky Hanor unless it was "customary for the area."

293.    Defendant Dicky Hanor received rent payment for renting the houses on the land of Plaintiff Charles Hanor.

294.    Defendant Dicky Hanor kept all of the rent for renting the houses on the land of Plaintiff Charles Hanor.

## VII.    FACTUAL HISTORY OF CONTRADICTING ASSERTIONS BY DEFENDANT AND EVIDENCE THAT DEFENDANT ADMITS CULPABILITY

295.    Defendant Dicky Hanor claims that he owes nothing to Plaintiff Charles Hanor.

296.    Defendant Dicky Hanor claims that Plaintiff Charles Hanor owes Defendant Dicky Hanor money.

297.    Defendant Dicky Hanor made misrepresentations and misstatements to Plaintiff Charles Hanor regarding the revenues he received from Plaintiff Charles Hanor's farmland.

298.    Defendant Dicky Hanor made misrepresentations and misstatements to Plaintiff Charles Hanor regarding Charles Hanor's share of the rent and expenses of Plaintiff Charles Hanor's farmland.

299.    Defendant Dicky Hanor made misrepresentations to Plaintiff Charles Hanor regarding the expenses he charged Plaintiff Charles Hanor for his share of the rent and expenses of Plaintiff Charles Hanor's farmland.

300.    Defendant Dicky Hanor made misrepresentations to Plaintiff Charles Hanor regarding the revenues he received from the potato growers.

301.    Defendant Dicky Hanor made misrepresentations to Plaintiff Charles Hanor that he paid Plaintiff Charles Hanor all of his share of the rent from the potato lease.

302.    Defendant Dicky Hanor made misrepresentations to Plaintiff Charles Hanor regarding the amounts charged Plaintiff Charles Hanor for fuel used to irrigate the potato land notwithstanding that Sowinski Farms paid 100 percent of the fuel costs.

303.    Defendant Dicky Hanor asserts that it unfair for Plaintiff Charles Hanor to receive half of the rental income on the farmland they own jointly.

304.    Defendant Dicky Hanor asserts that he will not allow Plaintiff Charles Hanor to receive his share of the rental income on the farmland they own jointly.

305.    Defendant Dicky Hanor asserts that it unfair for Plaintiff Charles Hanor to receive his share of all the rental income on the farmland Plaintiff Charles Hanor owned and inherited from their parents.

306.    Defendant Dicky Hanor asserts that he will not allow Plaintiff Charles Hanor to receive all the rental income on the farmland Plaintiff Charles Hanor owned and inherited from their parents.

307.    Plaintiff Charles Hanor was entitled to one-half of the rent from the potato lease on jointly owned land.

308.    Defendant Dicky Hanor admitted his underpayment was intentional when he told Plaintiff Charles Hanor that it was unfair for Plaintiff Charles Hanor to receive one-half of the rent from the potato leases on land jointly owned by Plaintiff Charles Hanor and Defendant Dicky Hanor and that Defendant Dicky Hanor would not give Plaintiff Charles Hanor his one half of the rent income.

309.    Defendant Dicky Hanor admits his underpayment is intentional by asserting that the Plaintiff Charles Hanor owes Defendant Dicky Hanor for pivot irrigation fixtures installed on the co-owned land.

310.    The pivot irrigation units are fixtures to the land that were purchased and placed on the land between about 1985 and 1994, twenty (20) or more years before Plaintiff Charles Hanor inherited the land.

311.    Even if Defendant Dicky Hanor were owed any money from Plaintiff Charles Hanor, Defendant Dicky Hanor has taken the Plaintiff Charles Hanor's rental income as an imagined offset without consultation or consent of the Plaintiff Charles Hanor.

312.    Defendant Dicky Hanor refuses to produce any business records that would support his claim he was owed any money from Plaintiff Charles Hanor. Defendant Dicky Hanor has taken the Plaintiff Charles Hanor's rental income as an offset without consultation or consent of the Plaintiff Charles Hanor.

313.    Although Defendant Dicky Hanor will not give Plaintiff Charles Hanor his share of the rent on land jointly owned by Plaintiff Charles Hanor and Defendant Dicky Hanor, Defendant Dicky Hanor charges Plaintiff Charles Hanor more than his share of the expenses.

314.    When Defendant Dicky Hanor crop-share leased the land jointly owned by Plaintiff Charles Hanor and Defendant Dicky Hanor, Defendant Dicky Hanor did not give Plaintiff Charles Hanor one-third of the revenues and charged Plaintiff Charles Hanor more than one third of the expenses.

315.    Plaintiff Charles Hanor was entitled to 100 percent of the rent from the potato leases on land solely owned by Plaintiff Charles Hanor and is now entitled to be made whole.

316.    Defendant Dicky Hanor keeps 100 percent of the rent from the potato leases on land solely owned by Defendant Dicky Hanor.

317.    As an example, in September of 2017, Defendant Dicky Hanor sent Plaintiff Charles Hanor a final statement of the shared earnings from 2017 potato contracts to Plaintiff Charles Hanor in Bexar County, Texas, which deliberately omitted two of the jointly owned properties or fields on which Defendant Dicky Hanor had a contract with Sowinski Farms.

318.    Defendant Dicky Hanor made misrepresentations to Plaintiff Charles Hanor regarding the amounts that the potato lessee paid for rent.

319.    Defendant Dicky Hanor made misrepresentations to Plaintiff Charles Hanor regarding the amounts of income he received and expenses he incurred from the Hanor Farm.

320.    Since Defendant Dicky Hanor and Plaintiff Charles Hanor have crop share rented their land to a third party, the expenses charged to Plaintiff Charles Hanor have gone significantly down.

321.    Since Defendant Dicky Hanor and Plaintiff Charles Hanor have crop share rented their land to a third party, the income received by Plaintiff Charles Hanor has gone up.

322.    During the time that Defendant Dicky Hanor rented Plaintiff Charles Hanor's land, Defendant Dicky Hanor overcharged Plaintiff Charles Hanor for expenses.

323.    During the time that Defendant Dicky Hanor rented Plaintiff Charles Hanor's land, Defendant Dicky Hanor under paid Plaintiff Charles Hanor his share of rent.

324.    During the time that Defendant Dicky Hanor rented Plaintiff Charles Hanor's land, Defendant Dicky Hanor caused Plaintiff Charles Hanor to receive an underpayment of government payments.

325.    Plaintiff Charles Hanor is entitled to an accounting to determine how much he has been overcharged and underpaid by Defendant Dicky Hanor and by Defendant Dicky Hanor's actions in Bexar County, Texas.

## VIII.    BREACH OF AGENCY CONTRACT

326.    Plaintiff Charles Hanor restates and incorporates the allegations contained in the above paragraphs.

327.    Plaintiff Charles Hanor entered into multiple annual contracts with Defendant Dicky Hanor to rent the farmland owned by Plaintiff Charles Hanor individually for crop-share rent on terms customary for the area.

328.    Defendant Dicky Hanor breached these contracts with Plaintiff Charles Hanor by paying Plaintiff Charles Hanor less rent than he was entitled to receive.

329.    Defendant Dicky Hanor breached these contracts with Plaintiff Charles Hanor by charging Plaintiff Charles Hanor more than Plaintiff Charles Hanor's share of the expenses.

330.    Defendant Dicky Hanor breached these contracts with Plaintiff Charles Hanor by

refusing to allow an audit of his records.

331.    Plaintiff Charles Hanor seeks from Defendant Dicky Hanor an award of damages for the over charges of expenses and under payments of revenues.

## IX.    BREACH OF PARTNERSHIP AGREEMENT

332.    Plaintiff Charles Hanor restates and incorporates the allegations contained in the above paragraphs.

333.    Plaintiff Charles Hanor entered into a partnership agreement with Defendant Dicky Hanor to rent the farmland owned by Plaintiff Charles Hanor jointly with Defendant Dicky Hanor to lease the Hanor Farm to third party lessees to farm the Hanor Farm for limited crops for limited times.

334.    Oral partnerships agreements are enforceable in Texas and Missouri which have respectively adopted the Revised Uniform Partnership Act (RUPA) and Uniform Partnership Law (UPL).

335.    Defendant Dicky Hanor breached the partnership agreement with Plaintiff Charles Hanor by paying Plaintiff Charles Hanor less rent than he was entitled to receive.

336.    Defendant Dicky Hanor breached the partnership with Plaintiff Charles Hanor by charging Plaintiff Charles Hanor more than Plaintiff Charles Hanor's share of the expenses.

337.    Defendant Dicky Hanor breached the partnership agreement with Plaintiff Charles Hanor by refusing to allow an audit of his records.

338.    Charles Hanor suffered damages as a result of the multiple breaches of the partnership agreement over a period of three years.

339.    Plaintiff Charles Hanor seeks from Defendant Dicky Hanor an award of damages for the over charges of expenses and under payments of revenues.

## X.     BREACH OF CONTRACT

340.     Plaintiff Charles Hanor restates and incorporates the allegations contained in the above paragraphs.

341.     Plaintiff Charles Hanor entered into an agreement with Defendant Dicky Hanor to rent the farmland owned by Plaintiff Charles Hanor solely and jointly with Defendant Dicky Hanor to lease the Hanor Farm to Defendant to farm the Hanor Farm for limited crops for limited times.

342.     Oral agreements are enforceable in Texas and Missouri.

343.     Defendant Dicky Hanor breached the agreement with Plaintiff Charles Hanor by paying Plaintiff Charles Hanor less rent than he was entitled to receive.

344.     Defendant Dicky Hanor breached the agreement with Plaintiff Charles Hanor by charging Plaintiff Charles Hanor more than Plaintiff Charles Hanor's share of the expenses.

345.     Defendant Dicky Hanor breached the agreement with Plaintiff Charles Hanor by refusing to allow an audit of his records.

346.     Charles Hanor suffered damages as a result of the multiple breaches of the agreement over a period of three years.

347.     Plaintiff Charles Hanor seeks from Defendant Dicky Hanor an award of damages for the over charges of expenses and under payments of revenues.

## XI.     COMMON LAW FRAUD

348.     Plaintiff Charles Hanor restates and incorporates the allegations contained in the above paragraphs.

349.     Defendant Dicky Hanor intentionally misrepresented the expenses and overcharged Plaintiff Charles Hanor for operating expenses on the farmland owned by Plaintiff Charles Hanor.

350.    Defendant Dicky Hanor intentionally misrepresented the amount of income being generated on the farmland owned by Plaintiff Charles Hanor.

351.    Defendant Dicky Hanor intentionally underpaid Plaintiff Charles Hanor his share of the revenue on the farmland owned by Plaintiff Charles Hanor

352.    The misrepresentations of Defendant Dicky Hanor were material.

353.    Defendant Dicky Hanor intended that Plaintiff Charles Hanor rely on the misrepresentations.

354.    Plaintiff Charles Hanor relied on the misrepresentations of Defendant Dicky Hanor.

355.    The aforementioned acts constitute common law fraud.

356.    As a proximate cause of Defendant Dicky Hanor's acts and omissions, Plaintiff Charles Hanor suffered damages.

## XII.    COMMON LAW CONVERSION

357.    Plaintiff Charles Hanor restates and incorporates the allegations contained in the above paragraphs.

358.    As explained above, Plaintiff has at all times relevant to the matter been the true and rightful owner of the property identified above.

359.    Plaintiff has at all times relevant to the matter been the true and rightful owner of the property and assets of Plaintiff.

360.    Beginning in 2014, Defendant unlawfully and without authority assumed control over Plaintiffs' property inconsistent with Plaintiff's rights in their property.

361.    Defendants did an unauthorized and wrongful assumption and exercise of dominion and control over the personal property of Plaintiffs, to the exclusion of or inconsistent with the Plaintiffs' rights.

362.    Defendant has begun and is using the property of Plaintiff.

363.    Plaintiff therefore sue for the fair market value of the converted property.

364.    Defendant's conversion and Defendant's knowing use of Plaintiffs' property was willful and malicious, and in conscious disregard of Plaintiffs' rights.

365.    Plaintiff is entitled to an award of exemplary damages sufficient to punish Defendant6 and serve as a deterrent to such unlawful conduct.

366.    Plaintiff seeks from Defendant an award of damages that exceeds the minimum jurisdictional limits of this Court.

## XII.    BREACH OF FIDUCIARY DUTY

367.    Plaintiff Charles Hanor restates and incorporates the allegations contained in the above paragraphs.

368.    In Texas, when a general partnership has not created a written partnership agreement, RUPA governs the fiduciary duties that agents owe to principals.

369.    Defendant Dicky Hanor was participating in a joint venture with Plaintiff Charles Hanor since February of 2014.

370.    Defendant mailed checks representing a share of profits of the joint venture to Plaintiff in Texas.

371.    Plaintiff mailed checks, from his home in Texas to third parties in Missouri, representing a share of the expenses of the joint venture.

372.    The acts of the parties establish a partnership under Texas and Missouri law.

373.    Defendant Dicky Hanor was a professional farmer with over fifty (50) years of experience.

374.    Defendant Dicky Hanor held himself out as a professional and highly skilled farmer.

375.    Plaintiff Charles Hanor has not lived on the family farm since 1970 when he began work full time in the United States Patent and Trademark Office immediately after graduating from the University of Missouri and attending George Washington University Law School at night after working all day.

376.    Defendant Dicky Hanor, as an express agent with actual authority to manage and lease Plaintiff Charles Hanor's solely owned land and the jointly owned Hanor farmland,  had and did breach the duty a) to serve; b) of loyalty; c) of care; d) of obedience; e) to inform co-partners; and f) to account to Plaintiff Charles Hanor in the administration of the jointly owned properties and the properties solely owned by Plaintiff Charles Hanor.

377.    Defendant Dicky Hanor violated his duty to serve co-partner and Plaintiff Charles Hanor through his misrepresentation of income and expenses.

378.    Defendant Dicky Hanor violated his duty of loyalty to Plaintiff Charles Hanor by making secret profits while engaged in the partnership business.

379.    Defendant Dicky Hanor violated his duty of care to Plaintiff Charles Hanor by acting solely in the Defendant Dicky Hanor's best interest and using the Plaintiff's property and co-owned property solely for Defendant Dicky Hanor's personal gain.

380.    Defendant Dicky Hanor violated his duty of obedience by acting to the detriment of Plaintiff Charles Hanor as the lessee and manager of the family farm.

381.    Defendant Dicky Hanor violated his duty to inform by signing leases on land owned and co-owned by the Plaintiff Charles Hanor without informing the Plaintiff.

382.     Defendant Dicky Hanor violated his duty to account by refusing to allow co-partner and Plaintiff Charles Hanor access to the records kept by Defendant Dicky Hanor's accountant.

383.     Plaintiff Charles Hanor was injured by being overcharged and underpaid for expenses and revenue, respectively resulting from Defendant Dicky Hanor's breaches of fiduciary duties.

384.     Plaintiff Charles Hanor is entitled to recover the for the overcharges and underpayments for expenses and revenue.

### XIII.   DECLARATORY JUDGMENT

385.     Plaintiff Charles Hanor restates and incorporates the allegations contained in the above paragraphs.

386.     Defendant Dicky Hanor claims that Plaintiff Charles Hanor owes Defendant Dicky Hanor rent and over $100,000.00 for irrigation pivot units, wells and pumps that were affixed to the farmland over twenty-five (25) years ago.

387.     Plaintiff Charles Hanor does not owe Defendant Dicky Hanor anything for irrigation pivot units, wells and pumps and other fixtures that were constructed on the farmland over twenty-five (25) years ago.

388.     The oral agreement and partnership agreement entered into by the Plaintiff and Defendant never contemplated capital expenditure recoupment for fixtures of the property inherited by the co-owners.

389.     Under Missouri law, and numerous other states, irrigation wells and irrigation pivot units constructed on farmland are fixtures and belong to the land and landowner.

390.     There is a (1) a justiciable controversy; (2) a legally protectable interest at stake; (3) a controversy ripe for judicial determination; and (4) an inadequate remedy at law.

391.   Irrigation pivot units are affixed to large unmovable concrete foundations pads at the pivot ends.

392.   Irrigation pivot units are essential to farming the land and required for farmland in Southeast Missouri.

393.   Defendant is not entitled to recoupment for fixtures like irrigation wells and irrigation pivot units constructed on the property inherited by the co-owners Plaintiff and Defendant.

394.   Plaintiff Charles Hanor is entitled to a declaratory judgment that he owes Defendant Dicky Hanor nothing for wells irrigation pivot units that were constructed on the farmland over twenty (20) years ago and that they are fixtures.

395.   There is an actual, present, and justiciable controversy between Plaintiff Charles Hanor and Defendant Dicky Hanor regarding whether Defendant Dicky Hanor owns 100 percent of the pivot irrigation units, wells and pumps or they are fixtures.

396.   There is an actual, present, and justiciable controversy between Plaintiff Charles Hanor and Defendant Dicky Hanor regarding whether Plaintiff Charles Hanor owes Defendant Dicky Hanor for the pivot irrigation units, wells, and pumps and whether they are fixtures.

397.   Accordingly, Plaintiff Charles Hanor seeks a declaratory judgment under the Declaratory Judgment Act to settle and afford relief from uncertainty and insecurity with respect to the rights, status, and other legal relations of the parties.

## XIV.   DAMAGES

398.   As a direct and proximate result of Defendant Dicky Hanor's conduct and actions, Plaintiff Charles Hanor suffered actual injuries and damages.

399.    Defendant Dicky Hanor engaged in deliberate conduct including bad faith or wrongful purpose toward Plaintiff Charles Hanor.

400.    There is an incidental benefit from the litigation to third-parties, namely the remaindermen in the life estate, Charles Hanor's two daughters..

401.    There is a benefit to the public as a whole to discourage the types of behavior of the Defendant..

402.    Defendant waited until he was caught not paying Plaintiff's share of the rent and revenues to assert that he owned the irrigation pivot units.

403.    As a direct and proximate result of Defendant Dicky Hanor's conduct and actions, Plaintiff Charles Hanor incurred attorney's fees and costs.

404.    Plaintiff Charles Hanor is entitled to his attorney fees under the law for the wrongful actions Defendant Dicky Hanor.

## XV.    NOTICE OF LITIGATION HOLD REQUIREMENT

405.    Defendant Dicky Hanor is hereby notified that they are legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Defendant Dicky Hanor know, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereinafter collectively referred to as "Potential Evidence").

406.    As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally

or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, Android-based smart phones, Windows-based smart phones, video cameras and still cameras, and any and all other locations where electronic data is stored. These sources may also include any personal electronic, digital, and storage devices of all of Defendant Dicky Hanor's agents or employees if Defendant Dicky Hanor's electronically stored information resides there.

407.    Defendant Dicky Hanor is hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to Defendant Dicky Hanor's claims and/or defenses. To avoid such a result, Defendant Dicky Hanor's preservation duties include, but are not limited to, the requirement that Defendant Dicky Hanor immediately notify their agents and employees to halt and/or supervise the auto-delete functions of Defendant Dicky Hanor's electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## XVI.   PRAYER

WHEREFORE, Plaintiff prays that:

a)      Plaintiff be awarded actual damages for the wrongful acts and breaches of Defendant Dicky Hanor;

b)      Plaintiff be awarded compensatory damages for the wrongful acts and breaches of Defendant Dicky Hanor;

c)      The Court enter a declaratory judgment declaring that Plaintiff owes Defendant Dicky Hanor nothing for irrigation pivot units, wells, electrical wiring, and pumps and that they are fixtures.

d)      Plaintiff be awarded reasonable and necessary attorneys' fees, expert witness fees, costs for copies of court records incurred by the Plaintiffs in the prosecution of this action.

e)      Plaintiff be awarded pre-judgment and post-judgment interest at the highest lawful rates;

f)      Plaintiff be awarded his taxable costs.

g)      Plaintiff be awarded such other relief as the Court deems just and equitable.


DATED          March 4, 2021.

                        Respectfully submitted,

                        /s/ Adam R. Lorenz_____
                        ADAM R. LORENZ, #MO54042
                        LORENZ & LORENZ, L.L.C.
                        339 Broadway, Suite 110
                        Cape Girardeau, Missouri 63701
                        (573) 332-1605
                        (573)  332-1606 (facsimile)
                        adam@lorenzfirm.com

                        ATTORNEYS FOR PLAINTIFF