UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CHARLES W. HANOR, et al.,  )<br>)<br>Plaintiffs,  )<br>)<br>v.  )<br>)<br>DICKY G. HANOR, et al.,  )<br>)<br>Defendants.  ) | Case No. 1:21CV34 ACL |

**MEMORANDUM AND ORDER**

The following motions are presently pending in this consolidated action:  (1) Plaintiff Charles W. Hanor's Motion to Strike Defendant's Expert Report of Jerry Whittington, or in the alternative, Motion to Compel Expert Disclosures (Doc. 37); and (2) the Motion to Partially Strike Plaintiffs' Petition for Partition of Real Property of Defendants Charles W. Hanor, Jean Hanor, Serena Aldrich, and Helena Hanor (Doc. 56).  These matters are fully briefed and ripe for disposition.

**Background**

Plaintiff Charles W. Hanor filed this action against Defendant Dicky G. Hanor, alleging various state law claims and requesting a declaratory judgment under the Declaratory Judgment Act.  (Doc. 1.)  Defendant Dicky G. Hanor subsequently filed a Petition for Partition of Real Property in state court, which was removed to this Court and captioned *Dicky G. Hanor, Kristi Hamrick, and Lynne Ferrell v. Charles W. Hanor, Jean Hanor, Serena Hanor, and Helena Hanor*, Case Number 1:22CV173ACL.  The undersigned granted Dicky G. Hanor's Motion to Consolidate, and consolidated the newly filed action into the above-captioned action, administratively closing the second action.

1

Charles W. Hanor's ("Plaintiff" or "Charles") Complaint reveals Charles and Defendant Dicky G. Hanor ("Defendant" or "Dicky") are brothers[1] who grew up near Charleston, Missouri, where their family owned a large amount of farmland. Defendant began farming the property in the 1970s, paying rent to his parents, until their mother Irene died in 2014. When Irene died, Plaintiff and Defendant inherited the property. Each brother inherited a full half-interest in part of the property, and a life estate in the other part of the property. The brothers entered into a partnership under which Defendant continued to farm the jointly owned land. From 2014 to 2016, Defendant farmed the property and made rent payments to Plaintiff. Defendant retired in 2016, at which time the farm was rented to a third party.

Plaintiff alleges that Defendant underpaid him rent and overcharged him expenses beginning in 2014. He further alleges that the parties dispute whether Plaintiff owes Defendant any money for irrigation pivots on the property that are used in the farming operations. The Complaint sets forth the following distinct claims: (1) breach of agency contract; (2) breach of partnership agreement; (3) breach of contract; (4) common law fraud; (5) common law conversion;[2] (6) breach of fiduciary duty; and (7) declaratory judgment. Plaintiff requests actual damages; compensatory damages; a judgment declaring that Plaintiff owes Defendant nothing for irrigation pivot units, wells, electrical wiring, and pumps and that they are fixtures; and attorneys' fees, expert witness fees, costs, pre-judgment interest, and post-judgment interest.

In his Petition for Partition of Real Property, Dicky, together with Kristi Hamrick and Lynne Ferrell ("Defendants" herein), request that the Court partition the property between Plaintiffs and Defendants according to their respective ownership rights in and to said property.

---

[1] The Court will refer to the Hanor brothers by their first names for the ease of the reader.
[2] The Court granted Defendant's Motion to Dismiss Plaintiff's conversion claim. (Doc. 17.)

I.     **Motion to Strike Expert Report**

Dicky hired Jerry Whittington as an expert to provide opinions regarding irrigation pivots. A central issue in this case is whether the pivots on the property are "fixtures."

"The test for determining whether property has become a fixture is three-fold, consisting of: 1) the annexation to the realty; 2) the adaptation to the use to which the realty is devoted; and 3) the intent that the object become a permanent accession to the land." *Freeman v. Barrs*, 237 S.W.3d 285, 288-89 (Mo. App. S.D. 2007). "Whether or not an article is a fixture depends upon the facts and circumstances of a particular case." *Id*. "The annexation element refers to the physical attachment of the property to the realty...." *Herron v. Barnard*, 390 S.W.3d 901, 911-12 (Mo. App. W.D. 2013).

Charles requests that the Court strike the expert report of Whittington, because Whittington's opinions are so fundamentally unsupported that they can offer no assistance to the jury. In the alternative, he requests that the Court compel Whittington and Mid-Valley Irrigation to make a complete disclosure of facts or data relied upon in forming the opinions and any exhibits used to summarize or support them.

Dicky responds that Charles' disagreements with Whittington's opinions may be addressed on cross-examination and in his arguments to the trier of fact. He contends that Charles' Motion should therefore be denied.

A. **Standard**

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702. *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The rule was amended in 2000 in response to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), which charged trial judges with a "gatekeeping" role to exclude unhelpful and unreliable expert testimony. The proponent of the expert testimony has the burden to prove its admissibility by a preponderance of the evidence. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

The "screening requirement" of Rule 702 has been reduced to a three-part test: (1) the testimony must be useful to the fact-finder in deciding the ultimate issue, *i.e.*, it must be relevant; (2) the expert must be qualified to assist the fact-finder; and (3) the testimony must be reliable or trustworthy in an evidentiary sense. *In re Bair Hugger Forced Air Warming Devices Products Liab. Litig.*, 9 F.4th 768, 777 (8th Cir. 2021).

The factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility. *First Union Nat'l Bank v. Benham*, 423 F.3d 855, 862 (8th Cir. 2005). Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. *Bair Hugger*, 9 F.4th at 778 (citing *Daubert*, 509 U.S. at 596).

### B. Plaintiff's Arguments

Charles argues that the report of Whittington should be excluded for the following

reasons: the report does not contain the facts or data upon which Whittington relied; Whittington's opinions are mere legal conclusions; and Whittington is biased. The undersigned will discuss these claims in turn.

**1. Facts and Data Supporting Opinions**

Plaintiff first argues that Whittington's report contains no substantive material to support his conclusions, in violation of Rule 26(a)(2)(B)(i)-(iii).

Defendant claims that Whittington did not rely upon any documents when formulating his opinion, except for one instance. Defendant states that Whittington reviewed Mid-Valley's file to determine the original purchase price for the pivots in his valuation analysis. He states that the documents were mistakenly not attached to Whittington's report. Defendant therefore attached the documents as Exhibit B to his Response, and indicates he will provide an official supplement to the report. Other than this one exception, Defendant contends that Whittington relied only on his own experience. Defendant notes that Whittington has a degree in agriculture from the University of Missouri, founded Mid-Valley Irrigation, Inc. in 1977, and has been in the pivot business for more than forty years. Defendant contends that Plaintiff's attacks on the foundation for Whittington's report go to the weight—not admissibility—of the opinions.

Plaintiff responds that he does not dispute Whittington's qualifications as an expert. Instead, he contends that the report should be stricken on the basis that it is "fundamentally unsupported and devoid of facts and/or reliable principles and methods, rendering it inadmissible." (Doc. 52 at 9.)

A report prepared by an expert who is expected to testify at trial "must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; and (iii) any exhibits that will be

5

used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B).  A party that has made an expert disclosure has a duty to supplement or correct its disclosure as follows: "(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court." Fed. R. Civ. P. 26(e)(1)(A)-(B).  "For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition.  Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2).

    The undersigned has reviewed Whittington's report and finds Whittington is qualified to provide testimony regarding pivots, his testimony would be useful to the fact finder, and his testimony is sufficiently reliable.  Whittington provides opinions in nine numbered paragraphs.  The topics of his opinions are as follows:  the expected life span of a pivot, the market for used pivots in the Southeast Missouri area, the different parts of a pivot, common circumstances under which pivots are moved, whether pivots are typically adapted to a particular field, whether Southeast Missouri farmers consider pivots to be fixtures, the common disposition of pivots when a tenant farmer stops farming a property, current pricing of pivots, and an estimation of pivot values of the pivots at issue in this matter. (Doc. 37-2 at 3-6.)  Whittington sets out the following facts regarding his background:  he funded Mid-Valley Irrigation, Inc. ("Mid-Valley"), a pivot business based in Charleston, Missouri, in 1977; he owned and operated Mid-Valley for 41 years, and currently acts as its assistant general manager; Mid-Valley is a dealer of Valley brand pivots and also sells parts, services pivots, moves pivots, and drills wells; Mid-Valley

6

works with farmers in Southeast Missouri and the surrounding area; he has worked in the pivot business nearly his entire seventy years of life; he has 40 years' experience with farming and pivot use in Southeast Missouri; and he has evaluated pivots for landlords, tenants, and different insurance companies. *Id.* at 2-3.

Whittington's background and experience qualify him to provide opinions regarding the pivot market and common practices with regard to pivot use in Southeast Missouri.  These subjects are directly related to Whittington's business experience in the pivot industry and are not so complicated that they would require documentation setting out the principles or methods upon which he relied.  Defendant represents that Whittington did not rely upon any documents when formulating these opinions.  Any issues Plaintiff has regarding these opinions can be adequately addressed at Whittington's deposition and at trial.

The only subject that requires documentary evidence is Whittington's opinion regarding the value of the specific pivots at issue in this case.  As previously noted, Defendant states that Whittington reviewed Mid-Valley's file to ascertain the original purchase price for the pivots. He then used the purchase price when calculating the values of the pivots.  Whittington referred to the Mid-Valley documents in his report but did not attach the documents to his report. Defendant acknowledged that the failure to attach these documents was an error, and has attached the documents to his Response.  (Doc. 45-2.)

Plaintiff responds that the newly disclosed documents do not cure the deficiencies of Whittington's report.  Specifically, Plaintiff argues that Whittington is not an appraiser by profession and he makes no attempt to explain how he arrived at his ultimate calculations.  He contends that there is no explanation as to his methodology and Defendant's Response does not

7

explain the methodology.  Plaintiff states that he cannot effectively depose Whittington as a result, and his report must be excluded.

The purpose of the expert report is to eliminate "unfair surprise to the opposing party" and to conserve resources by eliminating the need for lengthy expert depositions.  *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995) (citing Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note to 1993 amendment).  In accordance with this purpose, expert reports should be "detailed and complete," not "sketchy and vague."  *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) (citing Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note to 1993 amendment).  An expert report need not "replicate every word that the expert might say on the stand," but it should "convey the substance of the expert's opinion" so that "'opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'"  *Walsh v. Chez*, 583 F.3d 990, 993-94 (7th Cir. 2009) (quoting Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note to 1993 amendment); *see also Werth v. Hill-Rom, Inc.*, 856 F. Supp. 2d 1051, 1060 (D. Minn. 2012) ("The requirement to provide a report containing all bases for an expert's opinion is intended to permit opposing counsel to effectively prepare to depose the expert in advance of trial.").  In sum, Rule 26 contemplates that the report will provide notice to opposing counsel of the expert's opinions, but "that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report."  *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006).

In his report, Whittington indicates that he performed the following work to arrive at his estimates of the pivots at issue: thorough inspection of all eight pivots; inspected original pivot files to determine age and selling price; obtained "the necessary information on the Zimmatic

8

pivots," arrived at a value for each pivot based on age, brand, and condition of the equipment; and considered the value of the newer well on applicable pivots.  (Doc. 37-2 at 3.)  Before setting out his estimation of the pivots at issue, Whittington states that a "more detailed estimation of pivot values is included as separate exhibits."  *Id.*  Whittington attached to his report exhibits containing details of his estimations as to each pivot.  This material includes satellite pictures of the pivots, the original purchase prices of the pivots, Whittington's estimations as to depreciation, and his calculations as to their values.  *Id.* at 7-22.

Although Whittington could have provided more information as to his methodology for determining the pivots' estimated values, the Court does not find that exclusion of his opinion is warranted.  The report and the accompanying exhibits provide adequate information to allow Plaintiff to prepare for Whittington's deposition.  Whittington can elaborate upon his methods in his deposition testimony.  Any perceived flaws in Whittington's calculations may be addressed by Plaintiff at that time.

Plaintiff next challenges the majority of Whittington's opinions as unsupported and "mere legal conclusions."  (Doc. 37-1 at 12.)  Plaintiff specifically objects to the following statements: "Generally, the expected life span of a Valley pivot is at least forty years," "There is a strong market for used pivots," "the pivot unit can be disconnected from the pad and moved when necessary without any damage to the underlying property," "pivots are most commonly moved whenever a tenant and landlord split and a selling price cannot be agreed upon," "pivots are typically not specifically adapted to a particular field…," "In Southeast Missouri, farmers do not consider pivot units to be fixtures, as most parts of the pivot are movable…," "When a tenant farmer has purchased a pivot and no longer farms the property, it is most common for the

9

landowner to either pay the tenant for the pivot and keep the pivot on the property, or the tenant may sell his pivot to the next tenant…." *Id.*

An opinion is not objectionable just because it embraces an ultimate issue. Fed. R. Evid. 704(a). However, if the subject matter is within the jury's knowledge or experience, then the expert testimony should be excluded because it does not meet the helpfulness criterion of Rule 702. *Lee v. Andersen*, 616 F.3d 803, 809 (8th Cir. 2010). Opinions that merely tell the jury what result to reach are inadmissible. *Id.* Any doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility. *Bair Hugger*, 9 F.4th at 778.

Here, the undersigned finds that Whittington's opinions are proper and helpful to the fact finder. The use of pivots by Southeast Missouri farmers, including their disposition upon the cessation of farming, is not within the knowledge or experience of the average person. As previously discussed, these subjects are within Whittington's knowledge and experience based on his forty years in the pivot industry in Southeast Missouri.

**2. Whittington's Alleged Bias**

Plaintiff next argues that Whittington is biased, as he and his two partners "have been close, personal friends with Defendant since at least 1978." (Doc. 37-1 at 18.) He states that Mid-Valley sold, installed, and maintained five of the eight Hanor center pivot irrigation systems, which makes Whittington a "fact witness." *Id.* Plaintiff concludes that "Defendant and Whittington should be required to make complete disclosures under Rule 26 and pursuant to the Rule 45 subpoenas duces tecum as fact witnesses with firsthand knowledge of relevant facts." *Id.* at 19.

Defendant responds that any alleged bias is an issue for the trier of fact. With regard to Plaintiff's requests for disclosures, Defendant argues that there are no additional documents as

10

previously discussed.  Defendant contends that, to the extent Plaintiff seeks to compel documents pursuant to subpoenas, this issue must be raised by separate motion.

In his Reply, Plaintiff appears to have abandoned this issue, as he discusses neither Whittington's alleged bias nor his request for subpoenas.

"[A]n expert witness need not be unbiased for his or her testimony to be admissible."  4 Weinstein's Fed. Evid. § 702.04[5].  "Determining the credibility of a witness is the jury's province, whether the jury is lay or expert."  *DiCarlo v. Keller Ladders, Inc.*, 211 F.3d 465, 468 (8th Cir. 2000).  Evidence of bias may be drawn out during cross-examination.  *Id.*

The Court finds that Whittington's alleged bias is not a basis for the exclusion of his expert report.  The fact finder will determine the credibility of Whittington's report and testimony.

Thus, Plaintiff's Motion to Exclude Whittington's testimony is denied.  Plaintiff's alternative request to compel Defendant to make a complete disclosure of facts or date relied upon is also denied, as Whittington has provided Plaintiff with all such information.

**II.     Motion to Partially Strike Petition for Partition**

Charles, together with Jean Hanor, Serena Aldrich, and Helena Hanor ("Plaintiffs" herein), request that the Court strike portions of the Petition for Partition of Real Property filed by Dicky, together with Kristi Hamrick and Lynne Ferrell ("Defendants" herein).  Specifically, Plaintiffs request that the Court strike the following allegations contained in the Petition:

> 26.  Plaintiff Dicky Hanor has made substantial improvements to the property at his own expense, including but not limited to adding irrigation pivots and wells to the property.
> 27.  Plaintiff Dicky Hanor is entitled to the improvements to the property that are not fixtures, such as the irrigation pivots.
> 28.  For any improvements that will stay with property distributed to Defendants, Plaintiff Dicky Hanor is entitled to compensation from Defendants for the value of the improvements made.

(Doc. 59 at 4.)  Plaintiffs contend that the allegations in paragraphs 26 through 28 should be stricken as "redundant, immaterial, and/or impertinent."  (Doc. 56 at 2.)

Defendants dispute that the allegations at issue are redundant, immaterial, or impertinent, and argue that Plaintiffs have failed to identify how the allegations prejudice them.

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "Judges enjoy liberal discretion to strike pleadings under Rule 12(f)."  *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (citation omitted).  However, striking a party's pleading is a disfavored and extreme measure.  *Id.* (citation omitted).

In ruling on a motion to strike pursuant to Rule 12(f), a court must construe the pleadings in the light most favorable to the nonmoving party and even where allegations are redundant or immaterial, they should be stricken "only if prejudicial to the moving party."  *Giblee v. RJW Transp., Inc.,* Nos. 1:10CV0060SNLJ, 1:10CV0120SNLJ, 2010 WL 4974863, at *2 (E.D. Mo. 2010); *see also Morgan v. Midwest Neurosurgeons, LLC,* No. 1:11CV37 CEJ, 2011 WL 2731534, at *1 (E.D. Mo. July 12, 2011).  In short, motions to strike are disfavored and infrequently granted.  *Giblee,* 2010 WL 4974863, at *2 (citing 2 James W. Moore, *et al.,* Moore's Federal Practice § 12.37[3] (3d ed. 2009)).

Here, Plaintiffs attempt to argue the merits of the ultimate issues in this consolidated action.  Even assuming for the purposes of this Motion that the allegations at issue are "redundant," "immaterial," or "impertinent," the Court finds that Defendants have made no showing of any resulting prejudice from their inclusion in the Petition.  Thus, the Court declines to undertake the extreme measure of striking these allegations.

Accordingly,

**IT IS HEREBY ORDERED** that Charles W. Hanor's Motion to Strike Defendant's Expert Report of Jerry Whittington, or in the alternative, Motion to Compel Expert Disclosures (Doc. 37) is **denied.**

**IT IS FURTHER ORDERED** that Charles W. Hanor, Jean Hanor, Serena Aldrich, and Helena Hanor's Motion to Partially Strike Plaintiffs' Petition for Partition of Real Property of Defendants (Doc. 56) is **denied.**

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of March, 2023.