UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| CHARLES W. HANOR, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-CV-34-ACL |
| | ) | |
| DICKY G. HANOR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

Presently pending in this consolidated action is the Motion for Partial Summary Judgment of Charles W. Hanor, Jean Hanor, Serena Aldrich, and Helena Hanor ("Plaintiffs"). (Doc. 50.) Also pending is Defendant Dicky Hanor's Motion to Dismiss for Lack of Jurisdiction. (Doc. 84.) These matters are fully briefed and ripe for disposition.

## **Background**

Plaintiff Charles Hanor originally filed this action against Defendant Dicky Hanor, alleging various state law claims and requesting a declaratory judgment under the Declaratory Judgment Act. (Doc. 1.) Defendant Dicky Hanor asserted a Counterclaim for a declaratory judgment against Charles Hanor.

Defendant Dicky Hanor, along with others, subsequently filed a Petition for Partition of Real Property in state court against Charles Hanor and others. Charles Hanor removed the action—captioned *Dicky G. Hanor, Kristi Hamrick, and Lynne Ferrell v. Charles W. Hanor, Jean Hanor, Serena Hanor, and Helena Hanor*, Case Number 1:22-CV-173-ACL—to this Court on the basis of diversity jurisdiction. The new parties in this action were alleged to have a remainder interest in the property at issue. The undersigned granted Charles Hanor's Motion to

1

Consolidate the new action with the original declaratory judgment action, noting that no objections to the motion had been filed, and finding there were common issues of law and fact involved in both cases.  Namely, both cases involve a dispute regarding whether pivot irrigation systems on property jointly owned by Charles Hanor and Dicky Hanor are fixtures.  The Court consolidated the newly filed action into the above-captioned action, administratively closing the second action.

Charles Hanor's ("Plaintiff" or "Charles") First Amended Complaint ("Complaint") reveals Charles and Defendant Dicky Hanor ("Defendant" or "Dicky") are brothers who grew up near Charleston, Missouri, where their family owned a large amount of farmland.  Defendant began farming the property in the 1970s, paying rent to his parents, until their mother Irene died in 2014.  When Irene died, Plaintiff and Defendant inherited the property.  Each brother inherited a full half-interest in part of the property, and a life estate in the other part of the property.  The brothers entered into a partnership under which Defendant continued to farm the jointly owned land.  From 2014 to 2016, Defendant farmed the property and made rent payments to Plaintiff.  Defendant retired in 2016, at which time the farm was rented to a third party.

Plaintiff alleges that Defendant underpaid him rent and overcharged him expenses beginning in 2014.  He further alleges that the parties dispute whether Plaintiff owes Defendant any money for irrigation pivots on the property that are used in the farming operations.  The Complaint sets forth the following distinct claims:  (1) breach of agency contract; (2) breach of partnership agreement; (3) breach of contract; (4) common law fraud; (5) common law conversion;[1] (6) breach of fiduciary duty; and (7) declaratory judgment.  Plaintiff requests actual damages; compensatory damages; a judgment declaring that Plaintiff owes Defendant nothing

---

[1] The Court granted Defendant's Motion to Dismiss Plaintiff's conversion claim.  (Doc. 17.)

2

for irrigation pivot units, wells, electrical wiring, and pumps and that they are fixtures; and attorneys' fees, expert witness fees, costs, pre-judgment interest, and post-judgment interest.

In his Petition for Partition of Real Property, Dicky Hanor, together with Kristi Hamrick and Lynne Ferrell ("Defendants" herein), request that the Court partition the property between Plaintiffs and Defendants according to their respective ownership rights in the property. Defendants further allege that they are entitled to the improvements made to the property that are not fixtures, and are entitled to compensation for the value of improvements that will stay with the property distributed to Plaintiffs.

The Court will address the pending motions in turn, beginning with Defendant's Motion to Dismiss for Lack of Jurisdiction.

## I. Motion to Dismiss for Lack of Jurisdiction

Defendant Dicky Hanor requests that the Court dismiss this matter for lack of subject matter jurisdiction. Defendant argues that this Court does not have subject matter jurisdiction over the partition action removed from the Mississippi County Circuit Court, and that case must be remanded. Defendant contends that Plaintiff's claims either relate to the jointly-owned land, and should therefore be litigated within the partition action in State court; or they fall below the required amount in controversy for diversity jurisdiction.

Plaintiff responds that Defendant's motion should be denied, as the diversity jurisdiction requirements are satisfied.

### A. Standard

"The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading[.]" 28 U.S.C. § 1446(b)(1). A defendant may remove to federal court any state court civil action over

3

which the federal court could exercise original jurisdiction. 28 U.S.C. § 1441(a). A federal court has original diversity jurisdiction over civil actions between citizens of different states when the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). A federal court's jurisdiction is measured at the time of filing or, for a removed case, at the time of removal. *See Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822-23 (8th Cir. 2011).

Once a case has been removed to federal court, "remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount." *Turntine v. Peterson*, 959 F.3d 873, 881 (8th Cir. 2020). The legal certainty standard requires plaintiff to show that the jurisdictional amount either cannot be awarded as a matter of law or that no reasonable jury could award damages totaling more than the jurisdictional amount. *Id.* Importantly, the question is not whether the actual damages or settlement demands are greater than the jurisdictional amount but whether a fact finder might legally conclude that they are. *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002).

**B. Discussion**

As an initial matter, there is no dispute that diversity of citizenship is present, as the partition petition states that plaintiffs are citizens of Missouri, Ohio, and Minnesota; and the partition defendants are citizens of Texas.

Defendant Dicky Hanor first argues that Missouri law requires that partition proceedings be resolved in state court. He next contends that the jurisdictional amount in controversy is not established, because there is no amount in controversy in a partition action.

A proceeding in partition is strictly statutory. *Hughes v. Wilson*, 733 S.W.2d 36, 37 (Mo. Ct. App. 1987). Chapter 528 governs partition suits. Section 528.030 provides as follows:

> In all cases where lands…are held in joint tenancy…it shall be lawful for any one or more of the parties interested therein, whether adults or minors, to file a

4

> petition *in the circuit court of the proper county*, asking for the admeasurement and setting off of any dower interest therein, if any, and for the partition of the remainder, if the same can be done without great prejudice to the parties in interest; and if not, then for a sale of the premises, and a division of the proceeds thereof among all of the parties, according to their respective rights and interests.

Mo. Rev. Stat. § 528.030 (emphasis added). In addition, "[i]t is well settled that in a partition proceeding, the parties are entitled to reimbursement for expenditures with respect to the property for taxes, insurance and necessary repairs and improvements." *Clark v. Dady*, 131 S.W.3d 382, 390 (Mo. Ct. App. 2004). Section 528.040 establishes the proper venue for partition actions, and states that such actions, "shall be filed in the circuit court of the county in which such lands…lie." Mo. Rev. Stat. § 528.040.

Defendant argues that general principles of statutory construction require that the partition action be heard in state court. Specifically, Defendant argues that, because there is no definition of "circuit court of the proper county," the term is presumed to have its plain and ordinary meaning. Defendant contends that the ordinary meaning in this context means that only the Mississippi County Circuit Court can decide this partition case. If this Court were to decide the action, Defendant contends that it would improperly be involved in a matter reserved for Missouri state courts.

Plaintiff argues that the Missouri statute relied upon by Defendant does not establish *exclusive* jurisdiction over the property at issue, and Defendant does not demonstrate that this Court must decline to hear this controversy. The undersigned agrees.

Although the Court could find no relevant caselaw addressing the Missouri partition statute, federal courts have heard partition actions involving similar state statutes. For example, in *Barr v. Hagan*, 322 F. Supp.2d 1280 (M.D. Ala. 2004), the Middle District of Alabama denied a motion to remand a state partition action. The Alabama petition statute at issue provided that "[*t*]*he circuit court shall have original jurisdiction* to divide or partition..…" Ala. Code § 35-6-

5

20 (emphasis added). After the defendant removed the action based on diversity, the plaintiff moved to remand, arguing the federal court lacked jurisdiction. *Barr*, 322 F. Supp.2d at 1282. The Court held that there was no jurisdictional conflict between the state and federal courts, and that the "probate exception" to federal jurisdiction did not apply. *Id. See also McClendon v. Straub,* 193 F.2d 596, 597 (5th Cir. 1952) (federal court possessed diversity jurisdiction over action for court to sell property sold and divide the proceeds among the joint owners); *Fischer v. Wurts*, No. CIV. A. 96-6863, 1997 WL 407987 (E.D. Penn. 1997) (court partitioning house owned by plaintiff and defendant as tenants in common).

In sum, Defendant cites no authority for the proposition that this Court is precluded from hearing a partition action under the plain language of Section 528.030.

The Court next considers whether the amount in controversy is satisfied. Defendant argues that the partition action does not meet the amount in controversy requirement because its operation will not create or convey title, but will only sever unity of title. Defendant relies upon *Fankhanel Farms Ltd. P'ship v. Holden-Conner Realty Co.*, No. 1:13-vv-57-DPM, 2013 WL 5934651, at *1 (E.D. Ark. Oct. 31, 2013), for the proposition that a partition action is a "zero-sum transaction" and does not therefore meet the amount in controversy.

In *Fankhanel*, the plaintiff and defendant were tenants in common, each holding an undivided one-half interest in the surface rights of a farm *Id.* The parties sought a partition in kind, due to a disagreement about a tenant. Defendant cites the following passage in *Fankhanel*:

> Fankhanel has not shown a sufficient amount in controversy. Start with Arkansas law. Each co-tenant has an absolute statutory right to partition. Ark.Code Ann. § 18–60–401. This right is part of owning this interest in real property; it is a constituent of title. Whether partition occurs by decree or deed, it is a zero-sum transaction for Fankhanel and Holden–Conner. "It is generally held that a partition of land creates no new title to the shares set off to the parties to be held in severalty, whether the partition be made by act of the parties or by a judgment or decree of the court. While its effect is to allocate the share of each in his

6

> allotted parcel of land, and extinguish his interest in all of the others, the title by which he holds his divided share is the same as that by which his undivided interest in the estate in common was held." *Wofford v. Jackson,* 194 Ark. 1049, 1056–57, 111 S.W .2d 542, 545–46 (1937). Partition will sever Fankhanel's and Holden–Conner's unity of possession, not create or convey title. *Johnson v. Ford,* 233 Ark. 504, 505–06, 345 S.W.2d 605, 605 (1961); *see generally* Supplement To Jones' Arkansas Titles § 1364 (D.R. Varn ed.1960).

*Id.*

Although not discussed by Defendant, the *Fankhanel* Court next distinguished the facts of *Fankhanel* from those of the plaintiff's authorities, "where the Court had to quiet disputed title, or resolve some dispute about the extent of ownership, as well as partition the property." *Id.* at 2.  Contrary to these authorities, no sum was in dispute in *Fankhanel*, and the plaintiff did not ask for a money judgment or for consequential damages.  *Id.*  The Court noted that the plaintiff "does not argue, and has not proved, that any difference in value exists between its one-half interest in the whole farm and a whole interest in half of it." *Id.*

Here, unlike the plaintiff in *Fankhanel*, the partition petition alleges that Dicky is "entitled to the improvements to the property that are not fixtures, such as the irrigation pivots," and to "compensation from Defendants for the value of the improvements made." (Doc. 59, ¶¶ 27-28.)  Defendants' expert, Jerry Whittington, valued the pivots at issue as totaling $169,813. (Doc. 45-1 at p. 4-5.)  Thus, any argument that the partition action does not meet the $75,000 amount in controversy is unfounded.

Because the requirements of diversity jurisdiction were present at the time of removal, and no other impediment to this Court's jurisdiction has been demonstrated, Defendant's Motion to Dismiss for lack of subject matter jurisdiction will be denied.

## II. **Motion for Partial Summary Judgment**

Having found the Court has jurisdiction over this consolidated action, the undersigned

7

next turns to the merits of Plaintiffs' Motion for Partial Summary Judgment.

Plaintiffs request that the Court grant partial summary judgment with respect to Plaintiff's declaratory judgment action, Defendant's declaratory judgment action, and the allegations contained in the Consolidated Defendants' Petition regarding the ownership of alleged improvements and the right to reimbursement from the Consolidated Plaintiffs. Specifically, Plaintiffs request judgment that: (1) the alleged improvements are fixtures that passed with the land, wherein Dicky and Charles Hanor are co-owners of the alleged improvements; (2) Dicky Hanor and the Consolidated Defendants are not entitled to compensation from Charles Hanor and the Consolidated Plaintiffs for the value of any alleged improvements and owe nothing for them; and (3) any payments withheld by Dicky Hanor or overcharges to Charles Hanor in alleged compensation for providing the pivots were improper.

Defendants respond that the issue of whether the pivots are fixtures is a factual issue that is not appropriate for summary judgment.

### A. Standard

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment to a moving party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party, but only if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Mere "metaphysical doubt as to the material facts" is insufficient to defeat summary judgment. *Id.*

In reviewing the record, a court must not weigh evidence at the summary judgment stage but instead should decide simply whether there is a genuine issue for trial. *Anderson v. Liberty*

8

*Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott*, 550 U.S. at 380."

### B.  Plaintiffs' Statement of Uncontroverted Material Facts

As an initial matter, Defendants argue that Plaintiffs' Statement of Uncontroverted Material Facts ("SUMF") fails to comply with this Court's Local Rules, in that each fact is not set forth in separately numbered paragraphs stating how the fact is established by the record. Additionally, Defendants argue that many of Plaintiffs' alleged facts are simply legal argument.

Federal Rule of Civil Procedure 56(c) provides that, in a summary judgment proceeding, a party asserting that a fact is or is not genuinely disputed must support his or her assertion by: (1) "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or (2) "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).

Local Rule 4.01(E) imposes requirements concerning statements of uncontroverted material facts in connection with summary judgment motions.  The Rule provides that the movant must file a statement of uncontroverted material fact setting "forth each relevant fact in a separately numbered paragraph stating how each fact is established by the record, with appropriate supporting citation(s)."  Eastern District of Missouri, Local Rule 4.01(E).  Every memorandum in opposition to a motion for summary judgment must include a response to the movant's statement of material facts.  *Id.*  "If a party fails to properly support an assertion of fact

9

or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may….consider the fact undisputed for purposes of the motion....or issue any other appropriate order." Fed. R. Civ. P. 56 (e).

"The 'concision and specificity required' by rules such as Local Rule 4.01(E) 'seek to aid the district court in passing upon a motion for summary judgment, reflecting the aphorism that it is the parties who know the case better than the judge.'" *Newbern v. American Family Mutual Insurance Company, S.I.*, No. 1:19CV 86 ACL, 2020 WL 3791547, at *3 (E.D. Mo. July 7, 2020) (quoting *Libel v. Adventure Lands of America, Inc.*, 482 F.3d 1028, 1032 (8th Cir. 2007)).  Local Rule 4.01(E) is designed "to prevent a district court from engaging in the proverbial search for a needle in the haystack.  Courts have neither the duty nor the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or a defense." *Id*. (quoting *Libel*, 482 F.3d at 1032).

Here, Plaintiffs' SUMF consists of 15 numbered paragraphs.  Of those paragraphs, only six appear to comply with the rules by containing a single statement of fact with a citation to the record supporting that fact. (Doc. 51 at §§ 1-3, 6, 9, 12.)  The remainder of the paragraphs contain multiple statements, and often include subparagraphs.  For example, Paragraph 7 consists of six sub-paragraphs (labeled "a" through "f"), with many of these sub-paragraphs further divided into paragraphs with roman numerals.  Many of these paragraphs and sub-paragraphs do not contain citations to the record.  Additionally, many of the statements do not contain facts at all, but instead set forth lengthy legal argument with citations to case law. *See id.* at §§ 4(a), 5, 13.  Finally, the last two paragraphs contain only excerpts of Plaintiffs' pleadings. *See id.* at § 15-16.

Plaintiffs have failed to follow Local Rule 4.01(E), and have not provided the Court with a statement of uncontroverted material facts with adequate citations to the record.  Although the Court could deny Plaintiffs' Motion for Summary Judgment on this basis, in the interest of judicial economy the Court will proceed to the merits of the Motion.

### C.  Plaintiffs' Arguments

Plaintiffs' Motion turns on whether the pivots at issue are fixtures.  Plaintiffs argue that the pivots are fixtures that passed with the land.  Defendants contend that the pivots are Dicky's personal property, although Defendants argue that genuine disputes of fact exist that preclude the entry of summary judgment.

"The test for determining whether property has become a fixture is three-fold, consisting of: 1) the annexation to the realty; 2) the adaptation to the use to which the realty is devoted; and 3) the intent that the object become a permanent accession to the land." *Freeman v. Barrs*, 237 S.W.3d 285, 288-89 (Mo. Ct. App. 2007).  "These elements or tests all present questions of fact and are not ordinarily resolvable by law.  *Bastas v. McCurdy*, 266 S.W.2d 49, 51 (Mo. Ct. App. 1954); *see Freeman,* 237 S.W.3d at 289.  The burden is on the party asserting the existence of a fixture to prove the elements, and "[e]ach of the elements ... must be present to some degree, however slight." *Id.* at 909.

The undersigned will discuss these elements in turn.

### 1.  Annexation

"The annexation element refers to the physical attachment of the property to the realty...." *Herron v. Barnard*, 390 S.W.3d 901, 911-12 (Mo. App. W.D. 2013).  "Annexation that may be slight and easily displaced does not prevent an article from becoming a fixture when the other elements are found." *Freeman*, 237 S.W.3d at 289.

11

Plaintiffs argue that there is no genuine issue of material fact that the pivots are annexed to the realty because pivots are bolted to large concrete pads connected to underground wells with pumps and either electrical wiring or a diesel engine, and cannot be removed without significant effort and expense.[2]

Defendants respond that only the center of the pivot is attached to a concrete pad that sits on top of a well, and the rest of the pivot travels around the field.  Defendants cite the testimony of their expert, Jerry Whittington.  Mr. Whittington testified that the well and concrete pad are not part of the pivot unit; the pivot unit can be disconnected from the pad and moved when necessary without any damage to the underlying property; and pivots can be and are moved to different locations, sometimes in excess of 100 miles away.  (Doc. 63-2 at 3-4.)  Defendants argue that Plaintiffs' own expert Jake Larue agrees, in that he testified there is a market for used pivots and that they can be moved without damaging the underlying property.  (Doc. 63-3 at 3-6.)

The undersigned finds that Plaintiffs have failed to demonstrate that the pivots at issue were annexed to the land.  Defendants have cited evidence in the record supporting their view that the pivots are movable.  Thus, genuine issues of material fact remain as to the issue of annexation.

### 2. Adaptation

"The adaptation element refers to the characteristics of fitness or suitability for the

---

[2]Due to the deficiencies of Plaintiff's SUMF as noted above, it is difficult to determine the evidence upon which Plaintiff relies to support this argument.

building or premises in question." *Hoffman Mgmt. Corp. v. S.L.C. of N. Am., Inc.*, 800 S.W.2d 755, 760 (Mo. Ct. App. 1990). This element is met if the chattel at issue is "peculiarly adapted to the real property." *Id.*

Plaintiffs argue that there is no genuine issue of material fact that the pivots are adapted to the realty as they are customized to the fields based on arm span length, soil type, and the degree of rotation required depending on the field.

Defendants again rely on the testimony of Mr. Whittington and Mr. Larue to argue that pivots are not adapted to the property. Specifically, Defendants note Mr. Whittington testified that pivots are not specifically adapted to a particular field; a pivot used in one field may be used in another; the only thing that might change is length, which is easily accomplished by adding or removing spans; and pivots are like "erector sets" because their parts can be used interchangeably. (Doc. 63-2 at 3-4.) Mr. Larue testified that the only real difference in pivots is how long the pivots are, and that pivot parts can be interchangeable. (Doc. 63-3 at 41.) In fact, Mr. Larue testified that one of the pivots at issue has major component parts from different manufacturers. *Id.* at 46.

The undersigned finds that genuine issues of material fact exist on the issue of adaptation.

3. **Intent**

The intent element refers to whether the "intention in annexing the article to the realty was to make it a permanent accession to the land." *Herron*, 390 S.W.3d at 912. "[I]ntention is to be determined as of the time the articles were annexed[,] and it is the [i]ntent of the annexor at the time of annexation [that] controls as to whether something is to be considered a fixture." *Id.*

Plaintiffs argue that the fact the pivots have been in continuous use and operation on the Hanor Farm until present for Dicky's benefit demonstrates Dicky's intent to annex them

13

permanently to the land for his use and personal benefit. Plaintiffs also note that there is no written agreement between Irene Hanor and Dicky regarding ownership of the pivots.

Defendants respond that, when Dicky purchased the pivots, he did not intend that they would become fixtures or the property of anyone other than himself. Defendants state that Mr. Whittington testified that farmers in Southeast Missouri do not consider pivots fixtures, due to their portability. (Doc. 63-2 at 4.) Defendants contend that the fact there was no written agreement with Irene Hanor regarding ownership of the pivots "actually proves the point of Dicky's intent as no agreement is necessary for him to use his own property." (Doc. 63 at 7.)

The undersigned has already found that genuine issues of fact remain as to the first two elements. The element of intent is no different. Significantly, the element of intent is "of paramount importance." *Bastas*, 266 S.W.2d at 51. Plaintiffs have not met their burden of demonstrating the element of intent.

The Court notes that Plaintiffs frequently cite *Hilty Family Ltd. Partnership, LP v. Scott*, 379 S.W.3d 883 (Mo. Ct. App. 2012). In *Hilty*, the Missouri Court of Appeals affirmed the decision of the circuit court after a bench trial that a center-pivot irrigation system was a fixture subject to a real estate mortgage on the land, rather than personal property. 379 S.W.3d at 889. The Court acknowledged that the appellant had presented evidence from which the trial court could have concluded the system was not a fixture, yet noted that "these elements or tests all present questions of fact and are not ordinarily resolved by law." *Id.* The Court concluded as follows:

> Whether or not an article is a fixture depends upon the facts and circumstances of a particular case. [citation omitted] Here, the trial court was in the best position to make factual findings and credibility determinations, and its judgment complies with the mandate set out in *Murphy v. Carron, supra*. Given the standard of review, we are disinclined to disturb that ruling.

14

*Id.*

The holding in *Hilty* is not supportive of the Court entering summary judgment in favor of Plaintiffs in this case. The *Hilty* Court was reviewing the factual findings of the trial court under a deferential standard. Here, the undersigned has found that factual disputes exist as to each element of the fixture analysis. As such, Plaintiffs' Motion for Partial Summary Judgment will be denied.

Accordingly,

**IT IS HEREBY ORDERED** Defendants' Motion to Dismiss for Lack of Jurisdiction of (Doc. 84) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment. (Doc. 50) is **denied.**

/**s**/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of September, 2023.