UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CHARLES W. HANOR, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 1:21-CV-34-ACL |
| DICKY G. HANOR, et al., | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Presently pending in this consolidated action is Defendant Dicky Hanor's "Alternative Motion for Partial Judgment on the Pleadings for a Determination that Jointly Owned Real Estate is Heirs' Property, for Appointment of Commissioners, for Appointment of Real Estate Appraiser, and Waiver of Right to Purchase Property." (Doc. 102.) Also pending is Defendant Dicky Hanor's Motion for Partial Summary Judgment. (Doc. 105.) These matters are fully briefed and ripe for disposition.

**Background**

Plaintiff Charles Hanor originally filed this action against Defendant Dicky Hanor, alleging various state law claims and requesting a declaratory judgment under the Declaratory Judgment Act. (Doc. 1.) Defendant Dicky Hanor asserted a Counterclaim for a declaratory judgment against Charles Hanor.

Defendant Dicky Hanor, along with others, subsequently filed a Petition for Partition of Real Property in state court against Charles Hanor and others. Charles Hanor removed the action—captioned *Dicky G. Hanor, Kristi Hamrick, and Lynne Ferrell v. Charles W. Hanor, Jean Hanor, Serena Hanor, and Helena Hanor*, Case Number 1:22-CV-173-ACL—to this Court

1

on the basis of diversity jurisdiction.  The new parties in this action were alleged to have a remainder interest in the property at issue.  The undersigned granted Charles Hanor's Motion to Consolidate the new action with the original declaratory judgment action, noting that no objections to the motion had been filed, and finding there were common issues of law and fact involved in both cases.  Namely, both cases involve a dispute regarding whether pivot irrigation systems on property jointly owned by Charles Hanor and Dicky Hanor are fixtures.  The Court consolidated the newly filed action into the above-captioned action, administratively closing the second action.

Charles Hanor's ("Plaintiff" or "Charles") First Amended Complaint ("Complaint") states that Charles and Defendant Dicky Hanor ("Defendant" or "Dicky") are brothers who grew up near Charleston, Missouri, where their family owned a large amount of farmland.  Defendant began farming the property in the 1970s, paying rent to his parents, until their mother Irene died in 2014.  When Irene died, Plaintiff and Defendant inherited the property.  Each brother inherited a full half-interest in part of the property, and a life estate in the other part of the property.  From 2014 to 2016, Defendant farmed the property and made rent payments to Plaintiff.  Defendant retired in 2016, at which time the farm was rented to a third party.

Plaintiff alleges that Defendant underpaid him rent and overcharged him expenses beginning in 2014.  He further alleges that the parties dispute whether Plaintiff owes Defendant any money for irrigation pivots on the property that are used in the farming operations.  The Complaint sets forth the following distinct claims:  (1) breach of agency contract; (2) breach of partnership agreement; (3) breach of contract; (4) common law fraud; (5) common law conversion;[1] (6) breach of fiduciary duty; and (7) declaratory judgment.  Plaintiff requests actual

---

[1] The Court granted Defendant's Motion to Dismiss Plaintiff's conversion claim.  (Doc. 17.)

damages; compensatory damages; a judgment declaring that Plaintiff owes Defendant nothing for irrigation pivot units, wells, electrical wiring, and pumps and that they are fixtures; and attorneys' fees, expert witness fees, costs, pre-judgment interest, and post-judgment interest.

In his Petition for Partition of Real Property, Dicky Hanor, together with Kristi Hamrick and Lynne Ferrell ("Defendants" herein), request that the Court partition the property between Plaintiffs and Defendants according to their respective ownership rights in the property. Defendants further allege that they are entitled to the improvements made to the property that are not fixtures, and are entitled to compensation for the value of improvements that will stay with the property distributed to Plaintiffs.

Defendant filed his "Alternative Motion for Partial Judgment on the Pleadings for a Determination that Jointly Owned Real Estate is Heirs' Property, for Appointment of Commissioners, for Appointment of Real Estate Appraiser, and Waiver of Right to Purchase Property" on September 14, 2023.  Defendant filed his Motion for Partial Summary Judgment the following day.  On September 22, 2023, the Court denied Defendants' Motion to Dismiss and also denied Plaintiffs' Motion for Partial Summary Judgment.  (Doc. 108.)

The Court will address the pending motions in turn, beginning with Defendants' Motion for Partial Summary Judgment.

I.      **Motion for Partial Summary Judgment**

Defendant requests that the Court grant partial summary judgment on a variety of issues contained in Plaintiff's First Amended Complaint.  Specifically, Defendant argues that he is entitled to summary judgment on the following issues: (1) the non-existence of a partnership between Plaintiff and Defendant and therefore the invalidity of all claims arising from the partnership alleged in Counts 2 and 5; (2) the non-existence of principal and agent agreements

3

for the purpose of Counts 1 and 5; (3) the absence of any specific fraudulent statements made by Defendant sufficient to support the fraud claim in Count 4; (4) the non-existence of fiduciary duties owed to Plaintiff with regard to Count 5; (5) there is no basis for punitive damages; (6) any claims for damages incurred more than five years prior to the filing of this suit on March 4, 2021; (7) claims for one-half of any revenues arising from the farm; (8) claims for attorneys' fees; (9) claims for expert witness fees; and (10) claims for pre-judgment interest.

Plaintiff responds that Defendant is not entitled to summary judgment on Counts 1,2, 4, or 5, because there are genuine triable issues of material fact as to the existence of partnership, agency, fraud, and fiduciary relationships. He contends that his claims are not time barred. Plaintiff states that he has made no claim for one-half of crop share revenues. Plaintiff argues that the issues of punitive damages, attorneys' fees, expert witness fees, and pre-judgment interest are improper in the context of a motion for summary judgment.

**A. Standard**

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment to a moving party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party, but only if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Mere "metaphysical doubt as to the material facts" is insufficient to defeat summary judgment. *Id.*

In reviewing the record, a court must not weigh evidence at the summary judgment stage but instead should decide simply whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Where the record taken as a whole could not lead a

rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott*, 550 U.S. at 380."

### B. Defendants' Statement of Uncontroverted Material Facts[2]

Charles Hanor and Dicky Hanor made arrangements relating to the Hanor Farm in 2014, after their mother's death. Under a crop share agreement, the brothers agreed that Dicky would receive two-thirds of the crop revenue and Charles would receive one-third of the crop revenue. Charles wanted one-half of the rents from potato leases, rather than one-third, whereas Dicky believed Charles should receive one-third. Dicky claims he never agreed to giving Charles one-half of any lease payments, but Charles disputes this fact. Charles is a licensed attorney, and has not actively been involved in the farming of the Hanor Farm since 1970.[3]

### C. Defendant's Arguments

As set out above, Defendant argues he is entitled to summary judgment on eight separate issues. The undersigned will discuss these issues in turn.

#### 1. Existence of Partnership (Counts 2 and 5)

Count 2 alleges a "Breach of Partnership Agreement" claim. (Doc. 96 at p. 39.) In Count 5, Plaintiff alleges a "Breach of Fiduciary Duty" claim. *Id.* at 41.

Defendant argues that there was never a partnership between Plaintiff and Defendant. As such, he claims that Counts 2 and 5 fail as a matter of law.

Plaintiff responds that the existence of a partnership is a fact-intensive issue inappropriate for summary judgment as intent is necessarily a subjective element. Plaintiff contends that there

---

[2]The Court's recitation of the facts is taken from Defendant's Statement of Uncontroverted Material Facts (Doc. 107) and Plaintiff's Response to Statement of Uncontroverted material Facts (Doc. 110), with any disputes noted.
[3]Although Charles admits these facts regarding his career, he contends that they are not relevant to the instant motion.

5

is sufficient evidence in the record from which a jury could find the parties intended to enter a relationship that constitutes a legal partnership.

Under Missouri law, "[a] 'partnership' is an association of two or more persons to carry on as co-owners a business for profit ...." Mo. Rev. Stat. § 358.060.1.  "A partnership agreement may be oral or written, express or implied from the parties' acts or conduct." *Arnold v. Erkmann*, 934 S.W.2d 621, 630 (Mo. Ct. App. 1996) (internal citation omitted).  "The required intent necessary to find a partnership existed is not the intent to form a partnership, but the intent to enter a relationship which in law constitutes a partnership." *Morley v. Square, Inc.*, 4:10CV2243 SNLJ, 2016 WL 1615676, at *7 (E.D. Mo. Apr. 22, 2016) (quoting *Hillme v. Chastain*, 75 S.W.3d 315, 317 (Mo. Ct. App. 2002)) (internal quotation omitted).  Notably, "when the essentials of such an agreement have been established, expressly or by implication, it is not to be avoided because of uncertainty or indefiniteness as to minor details and, in the absence of express agreement, it will be presumed that profits are to be shared equally." *Grissum v. Reesman*, 505 S.W.2d 81, 86 (Mo. 1974).

"Once a partnership is created, the partners owe a fiduciary duty to one another, regardless of the legal jargon used to describe the method of creating the partnership." *Chapman v. Dunnegan*, 665 S.W.2d 643, 647 (Mo. Ct. App. 1984) (internal citations omitted).

Here, the parties agree there is no written partnership agreement.  Plaintiff argues that Defendant's own testimony establishes there is a genuine issue of material fact that Defendant intended to enter a relationship with Plaintiff that in law constitutes a partnership.  Specifically, Plaintiff contends that the partnership between the parties was entered into for the purpose of Defendant farming the Hanor Farm land as a tenant farmer on a crop share basis between 2014 and 2016, and for the purpose of Defendant negotiating and signing cash rent leases for Hanor

6

Farm land from 2014 onward. Plaintiff argues that Defendant has admitted that the parties jointly engaged in the farming business for profit and shared in its losses. In addition to citing the deposition testimony of the parties, Plaintiff has submitted the Declaration of Charles W. Hanor in Opposition to Defendant's Motion for Partial Summary Judgment. (Doc. 109-21.)

In his Declaration, Charles Hanor states that he and Dicky Hanor agreed to share in the profits and losses with respect to the farming business involving Hanor Farm following their mother's death. *Id.* at p. 1. He states that this partnership commenced in or around February or March of 2014, when Dicky visited Charles' home in Texas to discuss the operation of the Hanor Farm business following their mother's death in January 2014. *Id.* at 2. Charles states that the brothers entered into oral crop share lease agreements in 2014, 2015, and 2016, until Dicky retired from farming the land as a tenant farmer. *Id.* Pursuant to the oral crop share lease agreements, Dicky was authorized to rent the Hanor Farm, including Charles' solely owned land, to plant crops on a crop share basis. *Id.* Under the oral crop share lease agreement between Dicky and Charles, the parties agreed that Dicky would receive 2/3 of the crop revenue and Charles would receive 1/3 of the crop revenue from his part of the land that Dicky farmed. *Id.* Charles agreed to pay one-third of expenses on land solely owned by Charles, and one-sixth of expenses on co-owned land. *Id.* Charles states that he relied on Dicky to accurately account to him the revenues and expenses of the business, which Charles received and paid. *Id.* In 2014 through 2021, Dicky and Charles agreed that Dicky would negotiate and sign cash rent leases with third-party farmers to plant crops such as potatoes and watermelons. *Id.* Charles expressly authorized and trusted Dicky to negotiate and sign leases on land owned solely by Charles and on jointly own land, and to act in Charles' best interest. *Id.* Dicky, as the signatory in cash rent leases, received all rental payments from third parties. *Id.* at 3. The brothers agreed that Dicky

7

would remit to Charles his share of the payment, which was the entire rental payment for land solely owned by Charles and one-half of the rental payment on jointly owned land.  *Id.*

Defendant disputes that the parties entered into a partnership.  He argues that the fact that the parties co-own land does not establish a partnership.  Defendant contends that portions of the proceeds from the Hanor Farm were paid to Plaintiff based on a landlord-tenant relationship, rather than a partnership.  Plaintiff notes that, under the relevant Missouri statute, no inference shall be drawn that a partnership exits under such circumstances.  Finally, Plaintiff argues that Plaintiff never asserted in his deposition testimony that the parties were partners.

Under the Missouri Uniform Partnership Act, "[j]oint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property.  Mo. Rev. Stat. § 358.070(2).  The statute also provides that the "receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but *no such inference shall be drawn if such profits were received in payment: (b) As wages of an employee or rent to a landlord…*"  *Id.* at §358.070(4)(b) (emphasis added).

Defendant cites this language to argue that Missouri law "flatly contradicts the existence of a partnership between these brothers." (Doc. 113 at p. 3.)  Defendant contends that the parties instead had a "standard landlord-tenant farming arrangement."  *Id.* at 2.

The undersigned finds that there is sufficient evidence in the record to support the existence of a partnership between Charles and Dicky.  First, it is undisputed that the parties shared in profits relating to the Hanor Farm business.  (Doc. 109-1 at p. 18.)  Dicky testified that he went to Charles' home in Texas after their mother died in 2014 to discuss how the profits of the Hanor Farm farming operations would be divided.  *Id.*  Second, Defendant testified that

8

Plaintiff was responsible for paying expenses related to the farming business, whether under a crop share lease or cash rent lease.  For example, he indicated that Plaintiff paid his share of taxes, fertilizer/chemicals, fuel, irrigation pivot repairs, and insurance payments.  *Id.* at 14-18.  The agreements between the parties regarding how the profits and expenses would be split depended on the farming arrangement (i.e., crop share versus cash rent leases) and the parties' ownership interest in the land.  *Id.*  With respect to crop share leases between 2014-2016, Plaintiff relied on Defendant to accurately account to him the revenues and expenses of the business, which Plaintiff then received and paid.  *Id.* at 16-17.  Third, the parties agreed that Defendant would negotiate and sign cash rent leases of Plaintiff's solely owned land and Plaintiff and Defendant's co-owned land with third-party farmers to plant crops such as potatoes and watermelons.  *Id.* at 16-21.  Plaintiff argues that the parties agreed to share in the losses of the business.  He cites Charles' testimony that Dicky complained that the business was not profitable in 2016, which caused Charles to suggest recording and digitizing an accounting of revenues and expenses.  (Doc. 107-1 at p. 10-11.)  Finally, Defendant agreed with Plaintiff's attorney's characterization of the brothers' relationship as a "partnership" during Defendant's deposition.  (Doc. 109-1 at 34, 39.)  Counsel stated "You're in a partnership with your brother.  There's money coming in for tis partnership.  Is that correct?", to which Defendant responded "Yeah."  *Id.* at 34.  Plaintiff's counsel subsequently stated, "and you're managing this partnership with your brother.  Is that correct?", and Defendant responded: "Right."  *Id.* at 39.

     In sum, Plaintiff has pointed to sufficient evidence in the record to support that the relationship between Charles and Dicky was more than merely a "standard landlord-tenant farming arrangement."  A jury could determine from the relevant facts that the parties intended to enter into a relationship that constitutes a legal partnership.  If the jury determines the parties

9

formed a partnership, the partners owe a fiduciary duty to one another. *See Chapman*, 665 S.W.2d at 647.  Thus, Defendant is not entitled to summary judgment on Counts 2 or 5 on this basis.

### 2. Agency Relationship (Counts 1 and 5)

Count 1 asserts a "Breach of Agency Contract" claim. (Doc. 96 at p. 38.)  Plaintiff alleges that he entered into multiple annual agreements with Defendant under which Defendant would rent the farmland solely owned by Plaintiff for crop share rent, as well as act as Plaintiff's agent to rent Plaintiff's solely owned land to third parties for cash rent leases. *Id.*  Plaintiff contends that Defendant breached these agreements by paying Plaintiff less rent than he was entitled to receive and charging Plaintiff more than his share of the expenses. *Id.* at 39.  As previously noted, Count 5 alleges a "Breach of Fiduciary Duty" claim. *Id.* at 41.

Defendant argues that Plaintiff's claim in Count 1 that there were annual agreements between the parties for Defendant to take certain actions on Plaintiff's behalf are contradicted by Plaintiff's testimony that the parties only reached an agreement one time, in 2014.  He argues that he is therefore entitled to summary judgment on the principal and agent claim in Count 1, and on the breach of fiduciary duty claims in Count 5.

Plaintiff responds Defendant is not entitled to summary judgment because Plaintiff has established the existence of an agency relationship between the parties.

Under Missouri law, "[w]hether an agency relationship exists is generally a factual question for the jury." *West v. Sharp Bonding Agency, Inc.*, 327 S.W.3d 7, 11 (Mo. Ct. App. 2010).  In general, an agency relationship may be created if "(1) the agent holds the power to alter legal relations between the principal and third parties; (2) the agent is a fiduciary with

10

respect to matters within the scope of agency; and (3) the principal has the right to control the conduct of the agent with respect to matters entrusted to the agent." *Id.* at 12.

Here, Defendant admits that he was responsible for negotiating and signing cash rent leases on Plaintiff's behalf for both the parties' co-owned land and Plaintiff's solely owned land. (Doc. 109-1 at 18-19.)  Defendant testified that he was authorized to negotiate, sign, and enter into cash rent leases on Charles' solely and jointly owned land, and that he had his brother's best interest in mind when doing so. *Id.*  He stated that he never discussed any of the lease negotiations with Plaintiff before signing the agreements, because Plaintiff could trust him to get the best deal. *Id.* at 21.  The Court finds that there are sufficient facts in the record from which a jury could find an agency relationship between Plaintiff and Defendant.  Thus, Defendant is not entitled to judgment on Counts 1 or 5.

### 3. Fraudulent Statements (Count 4)

In Count 4, Plaintiff asserts a "Common Law Fraud" claim.  (Doc. 96 at 41.)  Specifically, he alleges that  Defendant "intentionally misrepresented the expenses and overcharged on the Hanor Farm land owned by Plaintiff," "intentionally mispresented the amount of income being generated on the farmland owned by Plaintiff," and "intentionally underpaid Plaintiff his share of the revenue on the farmland owned by Plaintiff." *Id.*

Defendant argues that he is entitled to judgment as a matter of flaw on Count 4 because Plaintiff has failed to include specific statements by Defendant that were fraudulent, in violation of Rule 9(b) of the Federal Rules of Civil Procedure.  He contends that Plaintiff has already asserted a breach of contract claim in Count 3, and he is merely attempting to "repackage that breach of contract claim " in Count 4 as a separate fraud claim. (Doc. 106 at 7.)

11

Plaintiff responds that Defendant has waived his Rule 9(b) argument by failing to raise it prior to or concurrent with the filing of a responsive pleading.  Plaintiff further argues that he has adequately pled and provided evidence of Defendant's fraudulent misrepresentations, pointing to his Amended Responses to Defendant's First Set of Interrogatories.  For example, Plaintiff argues that Defendant knowingly sent a check, "whereby he noted '1/2 Cash Rent Potatoes' on a check to Plaintiff for Plaintiff's share of the second half of a rental payment made to Defendant by Sowinski Farms in 2014." *Id.* at 12.  Plaintiff contends that there is a genuine issue of material fact that Defendant knowingly represented to Plaintiff that this $12,183 check was Plaintiff's one-half share of the second rental payment received by Defendant, when it in fact was only one-third of the $36,549 check Defendant received from Sowinski.

The elements of an action for fraud under Missouri law are: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.,* 322 S.W.3d 112, 131-32 (Mo. 2010).  A state law fraudulent misrepresentation claim must "comply with the heightened pleading standards of Rule 9(b), which require plaintiffs to plead 'the circumstances constituting fraud ... with particularity.' Fed. R. Civ. P. 9(b)." *BJC Health Sys. v. Columbia Cas. Co.,* 478 F.3d 908, 917 (8th Cir. 2007).  To satisfy this requirement, the pleader must generally set forth the "who, what, when, where, and how of the misconduct charged." *BJC Health Sys.,* 478 F.3d at 917 (internal quotation marks and quoted cases omitted).

12

Here, the Complaint is silent as to the specific statements allegedly made by Defendant that would support a fraud claim. Instead, Plaintiff generally alleges that Defendant misrepresented the amount of income being generated on land owned by Plaintiff. His allegation therefore sets forth only the "who," but not the "what," "when," "where," or "how" of the alleged misconduct. As such, Count 4 fails to comply with the requirements of Rule 9(b).

Rather than arguing Count 4 complies with Rule 9(b), Plaintiff instead contends that Defendant has waived his argument by failing to make it "as a separate motion prior to or concurrent with the filing of a responsive pleading." (Doc. 109 at p. 11.) Plaintiff cites no authority for this proposition.

The Eighth Circuit has held that "a district court may enter summary judgment dismissing a complaint alleging fraud if the complaint fails to satisfy the requirements of Rule 9(b)." *Murr Plumbing, Inc. v. Scherer Bros. Fin. Services Co.*, 48 F.3d 1066, 1070 (8th Cir. 1995). *See also Pace v. Wells Fargo Bank, N.A.*, No. 4:11-CV-489 CAS, 2012 WL 3705088, at *13 (E.D. Mo. Aug. 27, 2012) (granting summary judgment when "plaintiffs fail to meet the heightened pleading requirements of Rule 9(b) applicable to this claim").

Thus, contrary to Plaintiff's contention, Defendant's 9(b) argument can be brought in a motion for summary judgment. Because Count 4 fails to meet the requirements of Rule 9(b), Defendant's Motion for Partial Summary Judgment will be granted and Count 4 will be dismissed.

### 4. Punitive Damages

Defendant argues that because there are no claims sufficient to support an action for breach of duties arising out of the partnership claim, the principal and agent claims, the fraud claim, or the breach of fiduciary duty claim, there is no basis for an award of punitive damages.

13

The Court has found that there are genuine triable issues of material fact as to the existence of partnership, agency, and fiduciary relationships between Plaintiff and Defendant. Thus, Defendant is not entitled to summary judgment on the issue of punitive damages.

**5. Claims Occurring Prior to March 4, 2016**

Defendant notes that this action was originally filed on March 4, 2021, and is subject to a five-year statute of limitations under Mo. Rev. Stat. § 516.120. Defendant contends that any of Plaintiff's claims relating to conduct occurring before March 4, 2016 are time-barred, and the Court should grant summary judgment as to these claims.

In response, Plaintiff first argues that Defendant's motion is procedurally improper, as a statute of limitations defense should have been raised in a Rule 12(b)(6) motion to dismiss. Plaintiff further argues that his claims are not time-barred because he did not discover Defendant's wrongful conduct until 2017.

When the allegations raised in the complaint affirmatively show that the statute of limitations has run, the case may be dismissed under Rule 12(b)(6). *See Smith v. Pike Cty. R III School*, 2007 WL 2669121 *2 (E.D. Mo. Sep. 6, 2007) (citing *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004)), and *Wycoff v. Menke*, 773 F. 2d 983, 984-5 (8th Cir. 1985). In diversity actions where the underlying cause of action is based on state law, the state law dictates the appropriate statute of limitations as well as when it begins to run. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 751–53 (1980).

Under Missouri Revised Statute § 516.120, most civil claims must be brought within five years of when the claims accrue. "Generally, claims accrue when the damage is sustained and is capable of ascertainment." *White v. CitiMortgage, Inc.*, 864 F.3d 924, 927 (8th Cir. 2017) (internal quotations omitted). Claims are capable of ascertainment "when the plaintiff is on

14

inquiry notice of the wrong and damages." *Huffman v. Credit Union of Texas*, 758 F.3d 963, 968 (8th Cir. 2014) (internal quotations omitted).

Here, Plaintiff argues that he did not discover Defendant's wrongful conduct until 2017. Plaintiff states in his Declaration that he did not obtain copies of leases from third-party farmer Sowinski until 2017, at which time he became aware he had sustained damages. (Doc. 109-21 at p. 3-4.) Plaintiff further states that he filed suit against Defendant in Texas alleging the same claims, which was pending from December 28, 2018 until approximately April of 2021. *Id.* at 6. He filed the instant action on March 4, 2021.

The Court finds that the instant action was timely filed, and Defendant has failed to demonstrate entitlement to summary judgment on this basis.

### 6. Claims for One-Half of Crop Share Revenues

Defendant next argues that Plaintiff's claims for one-half of the crop share revenues for the jointly-owned land are contradicted by his deposition testimony and fail. He contends that the Court should limit Plaintiff's damages claim to the difference between one-third of the Hanor Farm crop share revenues and what Charles actually received, rather than the one-half that he is currently claiming.

Plaintiff responds that he has made no claim for a one-half share of crop share revenues from Defendant. He contends that he instead alleges that he is entitled to and owed a one-half share *of rental payments made by third party lessees under cash rent leases* of Plaintiff and Defendant's co-owned land on the Hanor Farm. Plaintiff argues that Defendant conflates the two types of farming arrangements when reciting Plaintiff's deposition testimony.

The undersigned agrees that Defendant conflates the two types of farming arrangements at issue in this case (crop share and third-party cash leases), and that Plaintiff only requests one-

15

half of third-party cash rent. To the extent Defendant requests summary judgment on Plaintiff's alleged claim for one-half of crop share revenues, this relief will be denied.

### 7. Attorney's Fees, Expert Witness Fees, and Pre-Judgment Interest

Defendant argues that Plaintiff improperly claims legal fees, expert witness charges, and pre-judgment interest, which are not recoverable absent a statutory or contractual provision authorizing their recovery.

Plaintiff responds that these issues are improper in the context of a motion for summary judgment, and that they will be determined by the finder of fact at trial.

The undersigned agrees with Plaintiff that these issues are premature. *See Axis Specialty Ins. Co. v. New Hampshire Ins. Co.*, No. 15-0809-CV-W-ODS, 2016 WL 4257369, at *5 (W.D. Mo. Aug. 11, 2016) (denying summary judgment on issue of attorney's fees, prejudgment interest, noting "[w]ithout hearing all of the evidence, the Court cannot determine whether this matter meets one of the 'rare occasions' where it may consider awarding attorneys' fees.").

Thus, Defendant is not entitled to summary judgment on these issues.

### II. Motion for Judgment on the Pleadings

Also pending is Defendant's "Alternative Motion for Partial Judgment on the Pleadings for a Determination that Jointly Owned Real Estate is Heirs' Property, for Appointment of Commissioners, for Appointment of Real estate Appraiser, and Waiver of Right to Purchase Property." (Doc. 102.) As previously noted, this Motion was filed while Defendant's Motion to Dismiss due to lack of jurisdiction was pending, as an alternative form of relief in the event the Motion to Dismiss was denied. The Court has since denied the Motion to Dismiss, and has ruled on Defendant's Motion for Partial Summary Judgment herein. As such, the partition action will proceed in this Court.

Plaintiff contends that Defendant cites no authority mandating that the partition action must be adjudicated immediately. He states that, once the Court makes a determination of heirs' property and appoints an appraiser, the relevant statutes trigger a quick-moving procedural timeline. Plaintiff argues that there is no reason or authority that the partition must occur before the determination of whether the pivots are fixtures and whether Defendant is entitled to contribution or other compensation.

Defendant responds that the Missouri Save the Family Farm Act specifies a precise and mandatory process by which the Court should partition farm property, and that the partition action must be determined before the scheduled trial so that the parties know what will be tried. Defendant states that Missouri law provides that the claims raised by Plaintiff and Defendant in this case (except the claims pertaining to Plaintiff's solely owned land) *must* be resolved within the partition action. He argues that it would promote judicial economy for these matters to be resolved quickly within the partition action. Defendant thus requests that the Court take the following actions: (1) find the jointly-owned land is heirs' property; (2) appoint Commissioners; and (3) appoint an appraiser.

### A.  Standard

Rule 12(c) of the Federal Rules of Civil Procedure provides that after the pleadings are closed, a party may move for judgment on the pleadings. "Judgment on the pleadings should be granted only if the moving party clearly establishes that there are no material issues of fact and that it is entitled to judgment as a matter of law." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citing *Lion Oil Co., Inc. v. Tosco Corp.*, 90 F.3d 268, 270 (8th Cir. 1996)). A motion under Rule 12(c) is governed by the same standards as a motion under Rule 12(b)(6). *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010). When the plaintiff

17

moves for judgment on the pleadings, the Court accepts as true "all well-pleaded material allegations of the pleadings of the opposing party[,]" *Nationwide Mut. Ins. Co. v. Harris Med. Assocs., LLC*, 973 F. Supp. 2d 1045, 1050-51 (E.D. Mo. 2013), even if it appears that "actual proof of those facts is improbable," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

### B. Defendant's Argument

As previously stated, Defendant argues that the Court should enter partial judgment on the pleadings on his request for partition, make a determination that the jointly-owned farm property is "heirs' property," and initiate the partition procedure.

Missouri law provides that any action for rents, profits, or property damage that may arise from the land at issue in the partition must be included in the partition action. *Boehlein v. Crawford*, 605 S.W.3d 135, 140 (Mo. Ct. App. 2020); *see Delaney v. Gleed*, 169 S.W.3d 84, 8-88 (Mo. Ct. App. 2005). If such claims are not raised in the partition action, they will be barred by *res judicata* in a subsequent action. *See Boehlein*, 605 S.W. at 140 (finding claims of former tenant in common against fellow tenant for rent due, property damage, and breach of fiduciary duty precluded by *res judicata* when they were not raised in previous partition action that was settled and dismissed with prejudice); *see also Delaney*, 169 S.W.3d at 89 (holding trial court "must resolve the pending issues regarding rents, profits, insurance proceeds, and waste before entering a final judgment ordering a final distribution of the partition sale proceeds").

Missouri's Save the Family Farm Act, sections 528.700 to 528.750, requires the court in a partition action to determine whether the property is "heirs' property." Mo. Rev. Stat. § 528.705.2. If the court determines that the property is heirs' property, the property "shall be partitioned under sections 528.700 to 528.750 unless all of the cotenants otherwise agree in a record." *Id.* The Act defines "heirs property" as follows:

18

> real property held in tenancy in common that satisfies all of the following requirements as of the filing of a partition action:
>
> (a) There is no agreement in a record binding all the cotenants that governs the partition of the property;
> (b) One or more of the cotenants acquired title from a relative, whether living or deceased; and
> (c) Any of the following applies:
> a. Twenty percent or more of the interests are held by cotenants who are relatives;
> b. Twenty percent or more of the interests are held by an individual who acquired title from a relative, whether living or deceased; or
> c. Twenty percent or more of the cotenants are relatives.

Mo. Rev. Stat. §528.700.2(5).

Here, Defendant correctly notes that there is no dispute that the jointly-owned Hanor Farm land meets the requirements to constitute heirs' property. The "heirs property" determination, however, is only one isolated element of the partition process. Many disputed facts remain in the partition action. For example, the Partition Petition alleges that "Plaintiff Dicky Hanor is entitled to the improvements to the property that are not fixtures, such as the irrigation pivots." (Doc. 59 at 4.) This issue is highly contested amongst the parties. Similarly, the Petition's allegation that Dicky Hanor "is entitled to compensation from Defendants for the value of the improvements made" is disputed. *Id.*

Further, Defendant has identified no authority that would require this Court to start the partition process immediately. Defendant relies upon *Boehlein* for the proposition that the partition of the jointly-owned land must happen first. In *Boehlein,* as discussed above, the court found that claims for rent due, property damage, and breach of fiduciary duty were precluded by *res judicata* because they were not raised in a previous partition action that was settled and dismissed with prejudice. 605 S.W. at 140. As such, the facts in *Boehlein* involved the reverse situation of this case: the parties partitioned the land at issue *before* pursuing claims for rent due and breach of fiduciary duty. This sequence of events was found improper by the court. Thus,

19

*Boehlein* does not support Defendant's argument that the partition procedure must begin immediately, before the resolution of the claims in the declaratory judgment action.  Because the declaratory judgment claims for rent due and breach of fiduciary duty are consolidated with the partition action in this case, resolving the declaratory judgment claims in the jury trial set for March 19, 2024 is consistent with the holding in *Boehlein*.

In sum, Defendant has failed to establish entitlement to judgment as a matter of law on the partition Petition.  The Court further finds that, in the interest of judicial economy, the disputed issues in the declaratory judgment action should be resolved prior to the commencement of the partition process.  Thus, the Court will stay the partition proceeding pending the resolution of the trial on the declaratory judgment action.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment. (Doc. 105) is **granted in part and denied in part.**  The motion is **granted** as to Count IV and **denied** in all other respects.

**IT IS FURTHER ORDERED** that Defendant's "Alternative Motion for Partial Judgment on the Pleadings for a Determination that Jointly Owned Real Estate is Heirs' Property, for Appointment of Commissioners, for Appointment of Real Estate Appraiser, and Waiver of Right to Purchase Property" (Doc. 102) is **denied.**

/**s**/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of January, 2024.